**Nell HARRINGTON, Appellant,**

v.

**AETNA CASUALTY AND SURETY COMPANY, Appellee.**

No. 5198.

Court of Civil Appeals of Texas, Waco.

Dec. 29, 1972.

Rehearing Denied Jan. 18, 1973.

Brown, Brown & Bowen, Inc., Fred R. Brown, Garland, for appellant.

Lawrence R. Maxwell, Jr., Dallas, for appellee.

VIC HALL, Justice.

H. L. Harrington brought this action against the Aetna Casualty and Surety Company to recover attorney's fees incurred by him in the defense of a lawsuit which he claims Aetna improperly refused to defend under the terms of a liability insurance policy issued to him by Aetna. Before trial, Mr. Harrington died and his wife, Mrs. Nell Harrington, was duly substituted as plaintiff. Following a trial without a jury, judgment was rendered that plaintiff take nothing. We reverse and render.

On July 29, 1966, H. L. Harrington executed an application for automobile liability insurance under the Texas Motor Vehicle Assigned Risk Plan, with Aetna's agent. Harrington sought coverage on a 1964 Chevrolet one-half ton pickup and a 1964 Oldsmobile 4-dr. sedan. He stated under oath, in reference to both vehicles, that "the automobile is not used for business but it is driven to and from work." Thereupon, Aetna issued a standard "Family Automobile Policy" insuring both vehicles for the one-year term from August 13,

1966, until August 13, 1967. Thereafter, without further application or request by Harrington for renewal, and without request by Aetna for another application, Aetna renewed the policy for the one-year term from August 13, 1967 until August 13, 1968. Excepting the stated year of coverage, the terms and conditions of the original and the renewal policies are identical. Under the heading "DECLARATIONS," the renewal policy names Harrington as the insured, and describes his pickup and 4-dr. sedan as "Owned Automobiles."

The pertinent portions of the policy provide as follows:

"* * * Aetna * * * agrees with the Insured, named in the declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the declarations and subject to all of the terms of this policy: To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of * * * 'bodily injury' * * * or * * * 'property damage' arising out of the ownership, maintenance or use of the owned automobile * * * and the Company shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy * * *.

"DEFINITIONS:

" 'Owned automobile' means a private passenger * * * or utility automobile described in this policy for which a specific premium charge indicates that coverage is afforded * * * ;

" 'private passenger automobile' means a four wheel private passenger, station wagon, or jeep type automobile;

" * * *

" 'utility automobile' means an automobile * * * of the pick-up body type * * * not used for business or commercial purposes.

"DECLARATIONS:

"By acceptance of this policy, the Insured agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the Company or any of its agents relating to this insurance."

On June 27, 1968, Harrington was driving his pickup to his home for lunch when he was in collision with a motorcycle operated by Steve Hackett. Harrington reported the collision to Aetna's agent on July 1, 1968, and gave him the following written statement:

"My name is H. L. Harrington. I * * * work for the Cooper Concrete Company * * *. My capacity with that company is as an equipment buyer. In connection with my job I drive my own 1964 ½ ton Chevrolet pickup truck. In an average year I will put between 38,000 and 40,000 miles on the truck while performing my duties as a buyer for the Cooper Concrete Co. I rarely if ever use the pickup for my personal use as I have a 1964 Oldsmobile that I use for other than business purposes. The Cooper Concrete Company allows me $100 a month in compensation for my using my own truck for business purposes. In addition to the $100 the company buys approximately ⅔'s of the gasoline used in the truck."

Answering questions during a recorded interview with Aetna's investigator on July 10, 1968, Harrington made the following statements "concerning the accident":

" * * * Q. What is your connection with Cooper Concrete Company? A. I'm—I do—well, I hustle parts. Q. O.K. You're employed by them? A. Yes, sir. Q. You drive a '64 Chevy ½ ton pickup? A. That's right. Q. Is that your car? Your vehicle? A. Yes, sir. Yes, sir. Q. Is that the one that you used to hustle parts for the concrete company in? A. Yes, sir. Q. Do you also use that as your personal car? A. No, sir. * * * Q. On your pickup truck, do they pay you mileage on that? A. Yes, sir. Q. O.K. To use it? A. Yes, sir. * * * Q. All right, and you understand that we made a recording of this interview, don't you? A. Yes, sir. Q. And do you acknowledge everything you told me is true and correct? A. I sure do. Yes, sir."

Hackett sued Harrington in April, 1969, alleging that Harrington's negligence caused the collision and caused him bodily injuries, and sought $5,600 damages. Aetna refused to defend Hackett's suit on the ground that the accident "does not come within the terms of (the renewal) policy and does not qualify for coverage under the policy" because the pickup "is used mainly for business and commercial purposes." Harrington then secured legal counsel and successfully defended the suit. Hackett recovered nothing, his suit was dismissed with prejudice, and costs were assessed against him.

In this suit, Harrington pleaded the renewal policy, its liability provisions, the accident with Hackett, Hackett's suit, Aetna's refusal to defend the suit, his employment of a lawyer and successful defense against Hackett, and that he has obligated himself to pay his attorney a reasonable fee of $2,500. He prayed for a recovery of that amount.

Aetna answered Harrington's suit with a general denial, and, pleading the renewal policy, expressly denied liability on the following two grounds:

1. " * * * that (Harrington) used the pickup truck exclusively for business and commercial purposes and, therefore, by the definitions in said policy, (the) pickup truck was not within the policy coverage."

2. " * * * that within the sworn application for the policy (Harrington) made numerous misrepresentations as to his actual and intended use of the pickup, that (Aetna) relied upon the representations, that such reliance was reasonable and in accord with reasonable standards of business practice within the insurance industry, and that such misrepresentations were material and substantial in nature. Said representations were incorporated into the terms of said policy and became a part thereof. * * * that (Aetna) would not have issued said policy for the stated premium if the true facts as to use of the pickup truck had been made known to (Aetna)."

Plaintiff called upon the court to make and file findings of fact and conclusions of law. This was done, and the findings and conclusions and a complete statement of facts were brought forward in the record.

In summary, the court's conclusions that Harrington was not afforded liability coverage under the provisions of the renewal policy at the time of his collision with Hackett are based upon findings (1) that his *principal* use of the insured pickup during the policy period was for business purposes; and (2) that Aetna issued the renewal policy in reasonable reliance upon the statement made by Harrington in his application for the original policy that the pickup "is not used for business," which was a "material misrepresentation of fact"; and Aetna would not have issued the second policy "at the stated premium" therein if it had known of the misrepresentation at the time of the renewal.

Plaintiff questions the trial court's actions in eighteen points of error, contending:

(1) Inasmuch as the uncontradicted evidence shows, and the court found, that at the time of the accident Harrington was using the pickup to go home from work for lunch and not for business purposes, the court erred in holding that policy coverage was not provided at the time of the accident.

(2) Inasmuch as the undisputed evidence shows, and the court found, that Harrington did not make an application for the policy sued upon, the court erred in holding that coverage was not provided by the policy at the time of the accident.

(3) The judgment is erroneous because it is not supported by the findings of fact and conclusions of law.

(4) The court erred in holding that the policy did not provide coverage for the accident.

(5) The court erred in holding that Aetna was under no duty to defend Hackett's suit.

(6) The court erred in holding that the statement of intended use of the pickup made in the application for the "earlier, expired contract of insurance, if false, would void coverage" on the renewal policy.

(7) The court erred in admitting the application into evidence over plaintiff's objection because it was "an application for a previous policy covering an earlier period of time."

(8) The court erred in admitting the application into evidence because there was no pleading by Aetna that a misrepresentation had occurred in the application for the first policy.

(9) The judgment is erroneous because there is no pleading by Aetna that plaintiff made a misrepresentation in the application for the first policy and that Aetna relied upon a misrepresentation contained in the application for the first policy in issuing the policy sued upon.

(10) The judgment is erroneous because there is no pleading that Harrington owed a duty to inform Aetna "when he started to use the pickup

for business purposes and breached that duty."

(11) The court erred in holding that Harrington owed a duty to inform Aetna of a change in use of the pickup.

(12) The court erred in holding that, after failing to notify Aetna that he had started using the truck for business purposes, Harrington had no coverage under the policy "even when using the truck to go home for lunch."

(13) The court erred in holding that the policy was not effective and not valid solely because Harrington used the truck for business purposes prior to the accident in question.

(14) The judgment "is so contrary to the weight and degree of the evidence as to be manifestly wrong."

(15) The evidence is legally insufficient, and (16) factually insufficient, to support the Court's finding that when Harrington executed the application in July, 1966, he was using the pickup principally for business purposes.

(17) The evidence is legally insufficient, and (18) factually insufficient to support the Court's finding that the statements made by Harrington in his application in July, 1966, concerning his usage of the pickup truck was a "material misrepresentation of fact as to the present policy sued upon."

■ It is the general rule that a renewal of a policy constitutes a separate and distinct contract for the period of time covered by the renewal. Great American Indemnity Co. v. State (Tex.Civ.App., 1950, writ ref.) 229 S.W.2d 850, 853. It is also the general rule that the delivery of a policy by the insurer to the insured upon the expiration of a policy without request by the insured is an offer or proposal by the insurer which must be accepted by the insured before a renewal is effected. Houston Fire & Casualty Ins. Co. v. Pritchard & Abbott (Tex.Civ.App., 1954) 272 S.W.2d 392, 395, affirmed at 155 Tex. 120, 283 S.W.2d 728 (1955); Bussey v. Trinity Universal Insurance Company (Tex.Civ. App., 1961, writ ref., n. r. e.) 344 S.W.2d 220, 224.

■ Without dispute in the record, Aetna offered to insure (by policy renewal) Harrington's pickup as a "utility automobile"—that is, as "an automobile of the pickup body type not used for business or commercial purposes." Harrington's retention of the policy without dissent effected an acceptance of the policy and raised a rebuttable presumption that he knew its contents. Fireman's Fund Indem. Co. v. Boyle General Tire Co. (Tex.Sup., 1965) 392 S.W.2d 352, 355. Nevertheless, as found by the court without challenge from plaintiff, Harrington's use of the pickup during the renewal policy period was *principally* for business purposes. Additionally, the court found, without challenge from Aetna, that the pickup is a dual purpose vehicle which may be used as a private passenger car or as a commercial vehicle, and that, at the time of his accident with Hackett, Harrington was using the pickup to go home for lunch. Without question, Harrington's use of the pickup in his business jeopardized the coverage afforded him by the provisions of the policy; but his dual purpose use of the vehicle could not have otherwise affected Aetna's exposure under the policy and, in our opinion, did not invalidate the policy and deprive him of coverage when he was using the pickup as a private passenger vehicle. Accordingly, we sustain plaintiff's 1st, 12th and 13th points of error.

Plaintiff's 15th and 16th points of error are without merit and are overruled. The written and oral statements made by Harrington to Aetna's representative, which we quoted, supra, were admitted into evi-

dence. Additionally, Mrs. Harrington testified that "in July, 1966" Mr. Harrington "worked for Cooper Concrete and he used his pickup truck * * * during the day while he was working * * * everyday at work * * * everyday in his work." This evidence is legally sufficient to support the finding that at the time Harrington executed the application he was using the truck principally for business purposes. Moreover, a careful review of the entire record convinces us that the finding is not so against the great weight and preponderance of the evidence as to be manifestly wrong.

Plaintiff argues that because there is nothing in the application or renewal policy to indicate that the statements made in the application were promissory warranties or intended to represent a continuing future use of the pickup, Aetna was without legal right to rely upon the truth of the statements as its basis for issuing the renewal policy and thereby avoid its obligations under the second policy. Of course, Aetna's argument is to the contrary. We find no Texas authorities on the question, although there is a statement in Couch On Insurance 2d, Sec. 68:37, which seems to favor Aetna's position. However, an answer to the question does not control our disposition of the rights of the parties; and, for the purpose of our decision, we shall assume, without deciding, that Aetna was legally entitled to rely upon the representations in the application, and did so, when it issued the second policy.

V.A.T.S. Ins. Code, Article 21.16, provides that a misrepresentation made in an application for a policy, or in the policy, shall not be a defense to a suit brought upon the policy unless it be shown upon the trial "that the matter or thing misrepresented was material to the risk or actually contributed to the contingency or event on which said policy became due and payable * * *."

There is no contention, or evidence, or finding, that Harrington's misrepresentation "contributed to the contingency or event on which said policy became due and payable." Neither is there contention, evidence or finding that the misrepresentation induced Aetna to issue Harrington a liability policy. Rather, Aetna pleaded and the court found that, but for its reliance upon the false statement, Aetna would not have issued the renewal policy *at the stated premium*. This finding is based upon the undisputed testimony of Aetna's trial representative that if Harrington had stated in the application that he was using the pickup "everyday for business" Aetna nevertheless would have renewed Harrington's liability insurance on the pickup, but with a commercial automobile policy "asking for more premium" rather than with a family automobile policy; that the premium rate is the "essential difference" between the two policies; and that "the company relied upon the representation made by Mr. Harrington as to the use of the pickup in his *application in determining the premium to be charged*."

Aetna says that, within the meaning of article 21.16 of the Ins. Code, a misrepresentation in an application for insurance is "material to the risk" if, had the true facts been known, the insurer would have charged a higher premium for the policy issued. There is dicta in a number of cases [1] which supports Aetna's position; but we believe the rule to be that the misrepresentation is not "material to the risk," as that phrase is used in the statute, unless it actually induced the insurance company

1. St. Paul Fire & Marine Ins. Co. v. Huff (Tex.Civ.App., 1915, no writ hist.) 172 S.W. 755, 756; Gorman v. Jefferson Standard Life Ins. Co. (Tex.Civ.App., 1925, no writ hist.) 275 S.W. 248, 251; Ohio Casualty Ins. Co. v. Stewart (Tex. Civ.App., 1934, writ dism.) 76 S.W.2d 873, 877; Crowder v. National Life & Accident Ins. Co. (Tex.Civ.App., 1936, writ dism.) 90 S.W.2d 267, 270; Inter-Ocean Insurance Company v. Ross (Tex. Civ.App., 1958, no writ hist.) 315 S.W.2d 71, 73.

to assume the risk. American Central Life Insurance Company v. Alexander (Tex. Com.App., 1933) 56 S.W.2d 864, 866; First Texas Prudential Ins. Co. v. Pedigo (Tex. Com.App., 1932) 50 S.W.2d 1091, 1092; Supreme Ruling of Fraternal Mystic Circle v. Hansen (Tex.Civ.App., 1913, writ ref.) 153 S.W. 351, 353; Indiana & Ohio Live Stock Ins. Co. v. Smith (Tex.Civ.App., 1913, writ ref.) 157 S.W. 755, 756; Aetna Life Ins. Co. v. King (Tex.Civ.App., 1919, writ ref.) 208 S.W. 348, 350; Trinity Reserve Life Ins. Co. v. Hicks (Tex.Civ.App., 1957, no writ hist.) 297 S.W.2d 345, 349. We therefore sustain plaintiff's 17th point of error and hold that, under the record, there is no evidence to support the court's finding that Harrington's misrepresentation was material.

■ Plaintiff's 3rd, 4th, 5th and 14th points of error are too general to present justiciable questions. Murphy v. Maroney (Tex.Civ.App., 1970, writ ref., n. r. e.) 456 S.W.2d 787, 788. They are overruled.

■ Plaintiff objected to the introduction into evidence of Harrington's application on the ground that it was "irrelevant and immaterial." Under the record, this objection was too general to merit consideration and the court did not err in overruling it. Plaintiff's 7th point of error is overruled.

■ Plaintiff's 8th, 9th and 10th points are overruled. She did not question the sufficiency of Aetna's pleadings in the trial court, and she may not do so for the first time on appeal. Rule 67, Tex.Rules Civ.Proc.; Bednarz v. State, 142 Tex. 138, 176 S.W.2d 562, 563 (1944).

Our disposition renders the 2nd, 6th and 11th points of error immaterial. And, because of our ruling on the 17th point, we do not reach point number 18.

The judgment of the trial court is reversed.

The court made an unchallenged finding that a reasonable attorney's fee for defend-

ing Hackett's suit is $1,100. Aetna did not seek recovery of additional premiums. We therefore render judgment that plaintiff recover the sum of $1,100 from Aetna. Trial and appellate court costs are assessed against Aetna.

Reversed and rendered.