[No. A051979. First Dist., Div. Four. May 9, 1991.]

OLD LINE LIFE INSURANCE COMPANY OF AMERICA et al., Petitioners, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
IMOGENE S. SILVERA TRUST, Real Party in Interest.

**COUNSEL**

Kornblum, Ferry & Frye, John C. Ferry and Samuel M. Zaif for Petitioners.

No appearance for Respondent.

Hartsell & Caselli and Roger L. Hartsell for Real Party in Interest.

**OPINION**

ANDERSON, P. J.—Petitioners seek review of an order denying their motion for summary judgment. The action against petitioners arises from the rescission by petitioner, the Old Line Life Insurance Company of America (Old Line Life), of a life insurance policy. Rescission was based upon the undisputed fact that the insured misrepresented her history as a smoker on the insurance application. We conclude that the trial court erred in holding that there is a triable issue of fact as to the materiality of the misrepresentation. In addition, we reject the contention of real party in interest that Old Line Life waived its right to disclosure of the facts by its own failure to investigate.

I

On or about July 22, 1985, Old Line Life issued a life insurance policy in the amount of $250,000 to Imogene S. Silvera. On the application for the policy, Ms. Silvera indicated that she had not smoked cigarettes during the past 12 months. Ms. Silvera died as a result of breast cancer on December 6, 1986. Old Line Life's investigation of the claim for the insurance benefits revealed that Ms. Silvera had smoked between one and two packs of cigarettes a day for many years and had smoked during the twelve months preceding her application for insurance.

Petitioners moved for summary judgment in an action against them brought by the beneficiary of the policy, real party in interest herein. The motion was supported in part by the declarations of John Walthall, the insurance broker who sold the policy. Mr. Walthall stated that he had obtained Ms. Silvera's name from a list of persons who had recently become mortgagees. After Ms. Silvera returned a card he sent her, he telephoned her to discuss life insurance. During that conversation, Mr. Walthall asked her if she was a smoker. She asked why he was interested in knowing and he explained that the premiums were much lower for an applicant who does not smoke. She stated that she was a nonsmoker. Thereafter, Mr. Walthall met with Ms. Silvera in her home and again asked if she was a smoker and, in answer to her questioning, told her that rates for a smoker were approximately twice that for a nonsmoker. He also told her that if she misrepresented that she was a nonsmoker, the policy would be void. During that visit, an application was filled out. Ms. Silvera answered no to the question, "Has any person proposed for insurance . . . smoked cigarettes during the past 12 months?" and to the question, "[d]oes any person proposed for insurance currently smoke pipes or cigars?" Mr. Walthall recorded the answers. He also asked Ms. Silvera to read and fill out a "Non-Smoking Declaration." She did so indicating that she had not smoked cigarettes

during the past 12 months. In completing the line which read: "I do _____ do not _____ currently smoke pipes or cigars," Ms. Silvera placed a check after the phrase "I do." Mr. Walthall stated in his declaration that he did not believe the "Non-Smoking Declaration" had been sent to Old Line Life because the declaration was not necessary to the application.

The declaration of Donald Lotzer, senior vice-president/underwriting for Old Line Life, was also filed in support of the motion for summary judgment. Mr. Lotzer stated that Old Line Life would not have issued the subject policy had it been aware that Ms. Silvera had smoked cigarettes during the 12 months preceding the application date. Rather, it might have issued a smoker's insurance policy, the premium for which is about twice that of the policy issued. Mr. Lotzer stated that the nonsmoking declaration was not provided to Old Line Life until after the death of Ms. Silvera and went on to explain that the question of whether an applicant currently smokes pipes or cigars is not, by itself, material to Old Line Life. "An applicant for insurance who smokes only pipes or cigars is eligible for a nonsmoker's insurance policy. Only persons who have smoked cigarettes during the 12 months preceeding [*sic*] the date of application are ineligible for a nonsmoker's insurance policy. The purpose for asking the question whether pipes or cigars are smoked is to avoid needless suspicion of an applicant who represents that he has not smoked cigarettes during the past 12 months, but for whom a urine or blood test indicates the presence of tobacco by-products."

In support of their opposition to the motion for summary judgment, real party attached the declaration of Andrew F. Whitman, a consultant on insurance and risk management practice. After setting forth the information contained in the application and statements of Walthall and Lotzer regarding company practice, Mr. Whitman concluded that Old Line Life had been free to attain more information, that Old Line Life waited until after Ms. Silvera died to do proper investigation and underwriting reports, that "they were on notice that she smoked by the non-smoking declaration given to the agent" and that Old Line Life should not be able to re-underwrite Ms. Silvera's application after her death.

## II

Sections 331 and 359 of the Insurance Code provide that material misrepresentations or concealments in an application for insurance are grounds for rescission of the policy. Section 334 specifies that "[m]ateriality is to be determined . . . solely by the probable and reasonable influence of the facts upon the party to whom the communication is due . . . ." "The fact that the insurer has demanded answers to specific questions in an application for

insurance is in itself usually sufficient to establish materiality as a matter of law." (*Thompson* v. *Occidental Life Ins. Co.* (1973) 9 Cal.3d 904, 915-916 [109 Cal.Rptr. 473, 513 P.2d 353].)

"Other cases, however, inquire into the nature of the information withheld, and the likely practice of the insurance company had the concealed facts been truthfully disclosed. [Citation.] The test is the effect which truthful answers would have had upon the insurer." (*Taylor* v. *Sentry Life Ins. Co.* (9th Cir. 1984) 729 F.2d 652, 655; see also *Imperial Casualty & Indemnity Co.* v. *Sogomonian* (1988) 198 Cal.App.3d 169, 181 [243 Cal.Rptr. 639].)

 Real party contends that there is a triable issue of fact as to whether Old Line Life would have issued a nonsmoking policy had the company known the true facts of Ms. Silvera's smoking habits. Mr. Lotzer testified that the company would not have done so. However, real parties contend that the record is replete with instances by which Mr. Lotzer was contradicted. None of the citations to the record, however, contradicts Mr. Lotzer's assertion that a nonsmoking policy would not be issued to a cigarette smoker.

Section 359 of the California Insurance Code provides: "If a representation is false in a material point, whether affirmative or promissory, the injured party is entitled to rescind the contract from the time the representation becomes false." "[An insurance company] has the unquestioned right to select those whom it will insure and to rely upon him who would be insured for such information as it desires as a basis for its determination to the end that a wise discrimination may be exercised in selecting its risks." (*Robinson* v. *Occidental Life Ins. Co.* (1955) 131 Cal.App.2d 581, 586 [281 P.2d 39].)

 "The most generally accepted test of materiality is whether or not the matter misstated could reasonably be considered material in affecting the insurer's decision as to whether or not to enter into the contract, in estimating the degree or character of the risk, *or in fixing the premium rate thereon.*" (12a Appleman, Insurance Law & Practice (1981) § 7294, p. 368, fn. omitted, italics added; see also 7 Couch on Insurance (2d ed. 1985) § 35:79, p. 127.) Not every jurisdiction, however, has accepted as material a misrepresentation that affected only the premium. (See *Massachusetts Mut.* v. *Manzo* (1989) 234 N.J.Super. 266 [560 A.2d 1215, 1232]; *Harrington* v. *Aetna Casualty and Surety Company* (Tex. 1972) 489 S.W.2d 171.) The California Supreme Court in dicta has accepted the definition quoted above and has included the fixing of premiums within its definition of materiality. In *Holz Rubber Co., Inc.* v. *American Star Ins. Co.* (1975) 14 Cal.3d 45, 61

[120 Cal.Rptr. 415, 533 P.2d 1055, 79 A.L.R.3d 518], the court wrote: "Materiality is determined by the probable and reasonable effect that truthful disclosure would have had upon the insurer in determining the advantages of the proposed contract. [Citations.] Essentially, we must decide whether the insurer was misled into accepting the risk or fixing the premium of insurance. [Citations.]"

The only California case found that allowed rescission because of a misrepresentation material only to the premium is *Bennett* v. *Northwestern Nat. Ins. Co.* (1927) 84 Cal.App. 130, 136 [257 P. 586]. There, the insured brought an action on a policy covering his automobile for loss due to fire or theft. In affirming a defense verdict, the court wrote: "The evidence shows without contradiction that a higher premium rate was charged for insurance on 1920 models than on those of the year 1921, and in view of the rule that a misrepresentation is material which would affect the rate of premium or influence the insurer in accepting or rejecting the risk [citations], the model of the car was a fact material to the risk and the warranty if untrue would avoid the policy."

 Apparently, there has been no California case exploring the materiality of misrepresentations regarding smoking history on insurance applications. However, several jurisdictions have held that a misrepresentation as to the insured's status as a smoker, as a matter of law, was material and justified rescission of a life insurance policy which was issued at a discounted, nonsmoker rate. (See, e.g., *Mutual Ben. Life Ins. Co.* v. *JMR Electronics Corp.* (2d Cir. 1988) 848 F.2d 30 [summary judgment affd.]; *Ives* v. *INA Ins. Co.* (1990) 101 Ore.App. 429 [790 P.2d 1206] [denial of summary judgment revd.]; *Parker* v. *Prudential Ins. Co. of America* (4th Cir. 1990) 900 F.2d 772 [summary judgment affd.].)

In *Mutual Benefit*, the beneficiary of the insurance policy had contended that the misrepresentation was not material because Mutual would have provided insurance—albeit at a higher premium rate—even if the insured's smoking history had been disclosed. (*Mutual Ben. Life Ins. Co.* v. *JMR Electronics Corp.*, *supra*, 848 F.2d at p. 31.) The beneficiary took the position that the appropriate remedy would be to permit recovery under the policy in the amount that the premium actually paid would have purchased for a smoker. The court did not agree and explained:

"That Mutual might not have refused the risk on *any* terms had it known the undisclosed facts is irrelevant. Most risks are insurable at some price. The purpose of the materiality inquiry is not to permit the jury to rewrite the terms of the insurance agreement to conform to the newly disclosed facts but to make certain that the risk insured was the risk covered by the

policy agreed upon. If a fact is material to the risk, the insurer may avoid liability under a policy if that fact was misrepresented in an application for that policy whether or not the parties might have agreed to some other contractual arrangement had the critical fact been disclosed. . . . [A] contrary result would reward the practice of misrepresenting facts critical to the underwriter's task because the unscrupulous (or merely negligent) applicant 'would have everything to gain and nothing to lose' from making material misrepresentations in his application for insurance. Such a claimant could rest assured not only that he may demand full coverage should he survive the contestability period (citation), but that even in the event of a contested claim, he would be entitled to the coverage that he might have contracted for had the necessary information been accurately disclosed at the outset. New York law does not permit this anomalous result." (*Mutual Ben. Life Ins. Co.* v. *JMR Electronics Corp., supra*, 848 F.2d at p. 34.)

On the basis of the California statutes and cases, we conclude that California law allows an insurance company to rescind a life insurance policy based upon misrepresentations as to the insured's smoking history.

### III

Real party's primary contention below was that Old Line Life waived its right to rescind for the misstatement on the application. The insurer's right to disclosure of material facts may be waived by its own failure to follow up obvious leads. Waiver may be found where an insurer "neglect[s] to make inquiries as to [material] facts, where they are distinctly implied in other facts of which information is communicated." (Ins. Code, § 336.)

The example of waiver cited by real party is *DiPasqua* v. *California etc. Life Ins. Co.* (1951) 106 Cal.App.2d 281 [235 P.2d 64]. In that case, material information was not given to the insurance company regarding the medical history of the applicant for insurance. In response to a question, the insured answered that he had not been a patient in any hospital except for an appendectomy many years ago, when, in fact, he had been a patient in two hospitals within the past year. However, prior to medical examinations the insurance company had before it a written report obtained by it from an independent source which plainly stated that the insured's answer in response to this question was not true. In affirming a judgment for the beneficiary, the court explained: "The company was put upon notice prior to issuance of the policy that the answers of the insured could not reasonably be relied upon. We believe that under such circumstances the company had a duty of further inquiry and that such inquiry would have fully revealed all of the pertinent facts. In other words, the insurance company cannot rely solely upon the insured's answers in his application where it

conducts an independent investigation which reveals the falsity of such answers in material respects." (*DiPasqua* v. *California etc. Life Ins. Co.*, *supra*, 106 Cal.App.2d at pp. 284-285.)

In the instant case, the insurance company had no direct information that Ms. Silvera had, in fact, smoked cigarettes in the last 12 months. Real party contends that because Ms. Silvera apparently checked the nonsmoking declaration as to her smoking of pipes and cigars inconsistently with her answer to that question on the application, the agent who took down the information should have informed the underwriting department of an inconsistency and that the underwriting department should have considered Ms. Silvera unworthy of belief and have conducted an independent investigation. This is too farfetched a scenario to support an inference of waiver. The most this seeming inconsistency might have triggered was a question by Mr. Walthall to Ms. Silvera as to which box she meant to check on the nonsmoking declaration. Once that was clarified, there would have been no inconsistency. Even if Ms. Silvera was a current smoker of pipes and cigars, she would have been entitled to a nonsmoker policy.

We conclude that petitioners were entitled to summary judgment. We reach that conclusion having complied with the procedural requirements for issuance of a peremptory writ in the first instance. (See *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171 [203 Cal.Rptr. 626, 681 P.2d 893].) Let a writ of mandate issue directing respondent superior court to vacate its order denying petitioners' motion for summary judgment and enter a new order granting that motion.

Reardon, J., concurred.

POCHÉ, J., Concurring.—I concur in the decision to issue the peremptory writ, but my emphasis differs from the majority.

Disputes of this nature do not ripen into litigation until after a predictable round of preliminaries. The death of an ostensibly insured policyholder leads the ostensible beneficiary to make a claim under the policy. The insurer discovers what it believes was a material misrepresentation in the application, leading it to renounce coverage, rescind the policy, and offer the return of all premiums. The beneficiary protests, gets no satisfaction, and only then resorts to the courts. By the time this prefiling fandango is completed, both sides know that everything will come down to the issues of estoppel and waiver. These issues would be integral to a cause of action against the insurer, and therefore should have been pleaded. (See *Green* v. *Travelers Indemnity Co.* (1986) 185 Cal.App.3d 544, 555 [230 Cal.Rptr. 13]; *Lemat Corp.* v. *American Basketball Assn.* (1975) 51 Cal.App.3d 267, 275

[124 Cal.Rptr. 388]; 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, §§ 1044-1045, pp. 460-461.) Real party in interest did not do so.

In addition, real party's position rests entirely on the supposed disparity between the answers on the application and the "Non-Smoking Declaration" that were completed by Ms. Silvera and Mr. Walthall. Real party views petitioner as either having waived its right to rescind by virtue of that disparity, or being estopped to challenge what it otherwise admits was an untruthful answer by Ms. Silvera. The undisputed evidence, however, shows that petitioner saw only the application. It also appears to a virtual certainty that the reason Walthall did not forward the separate declaration was that he was told to discontinue his practice of doing so because the declaration was pertinent only to an application for a different type of insurance. The logic of this seems compelling; why would an insurer single out this topic alone for such redundant treatment? Real party therefore strains to no real purpose in seeking to have the supposed discrepancy between the application and the unforwarded declaration imputed to petitioner.

It thus appears that petitioner's decision to issue the policy was based on an application that included a flat-out misrepresentation. "Materiality is determined solely by the probable and reasonable effect which truthful answers would have had upon the insurer. The fact that the insurer has demanded answers to specific questions in an application for insurance is in itself usually sufficient to establish materiality as a matter of law." (*Thompson* v. *Occidental Life Ins. Co.* (1973) 9 Cal.3d 904, 916 [109 Cal.Rptr. 473, 513 P.2d 353], citations omitted.) In addition to this apparent presumption arising from the language of the application, petitioner presented uncontradicted evidence that it would not have issued the policy it did had it known of the untruth.

It thus appears that the materiality of an undisputed misrepresentation was shown by petitioner as a matter of law, if not as a matter of uncontradicted evidence. The only showing from real party pertained to extraneous matters that had not been put in issue by the pleadings. In these circumstances the order denying petitioner's motion for summary judgment cannot be sustained.

The petition of real party in interest for review by the Supreme Court was denied July 31, 1991. Mosk, J., was of the opinion that the petition should be granted.