[No. S115495. July 7, 2005.]

PATRICK O'RIORDAN, Plaintiff and Appellant, v.
FEDERAL KEMPER LIFE ASSURANCE COMPANY, Defendant and
Appellant.

## Counsel

Wohl Sammis Christian & Perkins, Wohl Sammis & Perkins, Alvin R. Wohl, Robin K. Perkins and Christopher F. Wohl for Plaintiff and Appellant.

Sarrail, Lynch & Hall, Vogl & Meredith, Linda J. Lynch and David A. Firestone for Defendant and Appellant.

## Opinion

**KENNARD, J.**—After his wife's death from breast cancer, plaintiff, as beneficiary of his wife's life insurance policy, sought to collect the policy proceeds. Defendant insurance company, however, rescinded the policy and denied plaintiff's claim. It asserted that the wife had concealed from the insurer her smoking of cigarettes in the 36-month period preceding her application, and that had she been truthful it would not have issued a policy at the "preferred nonsmoker rate." Plaintiff sued. The trial court granted the insurer's motion for summary judgment. We conclude that whether there was concealment is a disputed material fact, and therefore summary judgment was improper.

# I

■ Because plaintiff has appealed from the trial court's grant of summary judgment against him, we must "independently examine the record in order to determine whether triable issues of fact exist to reinstate the action." (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142 [12 Cal.Rptr.3d 615, 88 P.3d 517]; see also *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767 [107 Cal.Rptr.2d 617, 23 P.3d 1143].) "In performing our de novo review, we view the evidence in the light most favorable to plaintiff[]" (*Wiener, supra,* at p. 1142), and we "liberally construe" plaintiff's evidence and "strictly scrutinize" that of defendant "in order to resolve any evidentiary doubts or ambiguities in [plaintiff's] favor" (*ibid.*). Viewed in that light, these are the facts here:

In 1996, plaintiff Patrick O'Riordan and his wife Amy consulted Robert Hoyme, an independent insurance agent, for the purpose of replacing their life insurance policies with term life insurance. Hoyme suggested a policy issued by defendant Federal Kemper Life Assurance Company (Kemper). In the course of two meetings with Hoyme, the O'Riordans filled out application forms for Kemper policies at the preferred nonsmoker rate.

The insurance applications had a medical questionnaire, which asked these two questions: (1) "Have you smoked cigarettes in the past 36 months?," and (2) "Have you used tobacco in any other form in the past 36 months?" According to plaintiff, his wife, Amy, had smoked for many years but quit in 1991, five years before submitting her application. Amy told Hoyme that she had been a smoker and that her previous life insurance policy was a smokers' policy. She also mentioned that she "might have had a couple of cigarettes in the last couple of years." Hoyme replied: "That's not really what they're looking for. They're looking for smokers." He explained that the O'Riordans would have to undergo blood and urine tests to determine whether their bodies contained any traces of smoking. Someone—the record does not say whether it was Hoyme or Amy—checked the boxes marked "No" next to the two questions at issue. A doctor, approved and paid for by Kemper, examined Amy and took blood and urine samples, which showed no traces of nicotine.

Although Hoyme had been an independent agent for many years, he had not previously sold insurance for Kemper. He submitted a request to be appointed as Kemper's agent, along with the O'Riordans' policy application forms, to Cenco Insurance Marketing Corporation, a general agent for Kemper with authority to recruit agents. On May 24, 1996, two days after the

O'Riordans had filled out their applications, Cenco approved Hoyme's request to be appointed a Kemper agent. On June 28, 1996, Kemper issued a term life insurance policy to Amy at the preferred nonsmoker rate, listing plaintiff as the beneficiary. Kemper paid Hoyme a monthly commission as its agent on the policy.

In November 1997, Amy was diagnosed with metastatic breast cancer. When Amy learned that she had only a short time to live, she began smoking again. She died on June 26, 1998, two days before the policy's two-year contestability period expired.

When plaintiff sought to collect on Amy's life insurance policy, Kemper conducted an investigation and learned that in July 1995, less than a year before Amy applied for the policy, Amy had asked her physician for, and received, a nicotine patch. The physician's report stated that although Amy had quit smoking several years previously, "recently, due to some stressors, she did start to smoke a little bit again, but is not smoking as much as she smoked previously." Based primarily on this information, Kemper concluded that Amy had falsely answered the application's questions pertaining to her smoking. It denied plaintiff's claim, and it rescinded the policy it had issued to Amy.

Plaintiff then filed this action in superior court against Kemper, Cenco, and Hoyme. As amended, his complaint sought damages for breach of contract, breach of the covenant of good faith and fair dealing, negligence, fraud, negligent misrepresentation, and emotional distress. After plaintiff settled with Hoyme, the court, at plaintiff's request, dismissed the complaint against Cenco, leaving only Kemper as a defendant.

Kemper moved for summary judgment or summary adjudication, claiming the facts were undisputed that Amy falsely answered the application's questions about smoking and tobacco use in the 36 months preceding her application, thus entitling Kemper to rescind Amy's life insurance policy. Kemper added that had Amy told the truth it would not have issued the policy. In his response, plaintiff admitted that Amy had smoked a couple of cigarettes in 1995 but said that this was the full extent of her smoking in the 36-month period preceding her application, and that she had obtained the nicotine patch as a precautionary measure. Plaintiff asserted that Amy had accurately described her cigarette usage to Hoyme when she applied for the insurance policy. The trial court granted Kemper's motion and entered judgment for Kemper. Plaintiff appealed.

In a two-to-one decision, the Court of Appeal affirmed the judgment. Justice Nicholson's lead opinion concluded that even if Amy had smoked only two cigarettes in the 36 months preceding her application, she concealed the extent of her cigarette usage because she answered "no" to the questions in the application pertaining to her cigarette and tobacco usage in that period. The lead opinion described Kemper's two questions about Amy's use of tobacco as "a term of the [insurance] contract," which unambiguously required Amy to answer "yes" to each question if she had smoked even one cigarette during the 36-month period at issue. Although the lead opinion concluded that insurance salesman Hoyme was Kemper's agent when he assisted Amy in answering those two questions, it reasoned that Hoyme's actual and ostensible authority "did not extend to interpreting an unambiguous term in the insurance."

Justice Blease concurred in the result, but on different grounds. In his view, based on the report of Amy's doctor who had given her the nicotine patch, Amy's smoking "was not confined to a couple of cigarettes but was a continuous problem . . . ." Thus, he concluded, she "concealed the true extent of her smoking . . . which justifies rescission of the policy . . . ."

Justice Hull dissented. He concluded that Kemper was estopped from asserting any concealment by Amy of her cigarette use, because she did tell Hoyme, whom Justice Hull viewed as Kemper's agent, that she had smoked a couple of cigarettes in the two years before her application. Moreover, Justice Hull said, Hoyme had "the ostensible authority to advise Amy O'Riordan of the information the insurance company needed to decide whether to issue a nonsmoker's policy . . . ."

We granted plaintiff's petition for review.

## II

■ Under California law, every party to an insurance contract must "communicate to the other, in good faith, all facts within his knowledge which are . . . material to the contract . . . and which the other has not the means of ascertaining." (Ins. Code, § 332.)[1] "Materiality" is determined by "the probable and reasonable influence of the facts upon the party to whom the communication is due . . . ." (§ 334.)

■ When an insured has engaged in "concealment," which is defined by statute as the "[n]eglect to communicate that which a party knows, and ought to communicate" (§ 330), the insurer may rescind the policy, even if the act

---

[1] All statutory citations are to the Insurance Code unless otherwise stated.

of concealment was unintentional (§ 331). Similarly, a materially false representation at the time of, or before, issuance of a policy may result in rescission of the policy. (§ 359.) Thus, when an applicant for life insurance misrepresents his or her history as a smoker in order to obtain a nonsmoker rate, the insurer may rescind the policy. (*Old Line Life Ins. Co. v. Superior Court* (1991) 229 Cal.App.3d 1600, 1603–1606 [281 Cal.Rptr. 15].)

Kemper asserts that the facts are undisputed that Amy concealed the true extent of her cigarette use during the 36-month period preceding her application for life insurance. But plaintiff argues that Kemper is estopped from asserting any concealment by Amy because Hoyme, who plaintiff claims was Kemper's agent when he sold Amy the policy, told Amy she could answer "no" to Kemper's two questions inquiring into her smoking during the period at issue. Alternatively, plaintiff argues that Hoyme had ostensible authority to construe the meaning of the questions and that in advising Amy to respond "no" to the questions at issue, he misrepresented their meaning. (See 6 Couch on Insurance (3d ed. 1997) § 85:44, p. 85–67 ["If the insurer's agent construes the questions [in an insurance application] either by stating what they mean or by specifically stating that certain information is or is not required, any misrepresentations which result therefrom are charged to the insurer, the theory being that the insurer's agent remains the insurer's agent even though he or she is assisting the insured."]; see also 3 Appleman on Insurance 2d (Holmes ed. 1998) § 10.4, p. 12.)

Here, we need not decide the merits of plaintiff's claims of estoppel and ostensible authority. As we will explain, regardless of how those questions are resolved, it is a triable issue of fact whether Amy concealed or failed to communicate material information to Kemper regarding her use of cigarettes in the 36 months preceding her application for life insurance at a nonsmoker rate. Therefore, the trial court erred in granting Kemper's summary judgment motion.

Pertinent are Amy's answers to the two questions in Kemper's medical questionnaire inquiring into her cigarette and tobacco usage. The first question asked, "Have you smoked cigarettes in the past 36 months?" That inquiry can reasonably be construed as an attempt to determine *habitual* use, not the smoking of a single cigarette or two during that entire period. Had Kemper intended disclosure of the latter, it could have inquired into the smoking of "any" cigarette during the relevant period. The second question asked: "Have you used tobacco *in any other form* in the past 36 months?"

(Italics added.) Because this question directly followed the question pertaining to *cigarette* use, an applicant could reasonably construe it as inquiring into use of tobacco in any form *other than cigarettes*. Therefore, an applicant who, like Amy, has smoked just a couple of cigarettes but has not used tobacco in any other form during the period at issue could correctly answer "no" to this question.

Thus, if (as plaintiff maintains) Amy smoked only a cigarette or two during the 36 months preceding her application and did not use any other tobacco products, she did not conceal her cigarette usage by answering "no" to the two questions at issue.

■ Moreover, even if, as Kemper insists, those two questions required disclosure of even a single cigarette smoked during the period at issue, Amy did not conceal that information from Kemper, because she did mention it to Hoyme when she applied for the life insurance. Although Hoyme was not Kemper's agent when he assisted Amy in responding to Kemper's medical questionnaire, he became one when his request to be so appointed—submitted with Amy's application—was granted. (See generally § 1704.5.) Once he became Kemper's agent, Hoyme had a duty to disclose to Kemper any material information he had pertaining to Amy's life insurance policy, and Kemper is deemed to have knowledge of such facts. (*In re Marriage of Cloney* (2001) 91 Cal.App.4th 429, 439 [110 Cal.Rptr.2d 615] ["As a general rule, an agent has a duty to disclose material matters to his or her principal, and the actual knowledge of the agent is imputed to the principal."]; Civ. Code, § 2332 ["As against a principal, both principal and agent are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other."].) Therefore, Hoyme's knowledge of Amy's smoking of one or two cigarettes during the 36 months preceding the application was imputed to Kemper. ■ "The fact that the knowledge acquired by the agent was not actually communicated to the principal . . . does not prevent operation of the rule." (*Columbia Pictures Corp. v. DeToth* (1948) 87 Cal.App.2d 620, 630 [197 P.2d 580].)

■ Nor does it matter that Hoyme acquired the information regarding Amy's cigarette use before he became Kemper's agent. "The principal is charged with knowledge which his agent acquires before the commencement of the relationship when that knowledge can reasonably be said to be present in the mind of the agent while acting for the principal." (*Columbia Pictures Corp. v. DeToth, supra,* 87 Cal.App.2d at p. 631; see also *Schiffman v. Richfield Oil Co.* (1937) 8 Cal.2d 211, 220–221 [64 P.2d 1081]; Rest.2d Agency, § 276.) Here, because Hoyme became Kemper's agent shortly after acquiring information about Amy's smoking, his knowledge of her smoking

"can reasonably be said to be present in [his] mind" (*Columbia Pictures Corp., supra,* 87 Cal.App.2d at p. 631) while he was acting as Kemper's agent.

Kemper contends that Amy did not tell Hoyme that she had smoked any cigarettes during the 36 months preceding the application.[2] And Kemper points to the medical report by Amy's physician who, at Amy's request, prescribed a nicotine patch in the year preceding her application, as evidence that Amy smoked more than just "a couple" of cigarettes in the period at issue. Based on the medical report, Justice Blease concluded in his concurring opinion that Kemper was entitled to summary judgment because Amy's cigarette use "was not confined to a couple of cigarettes but was a continuous problem."

But the question of Amy's cigarette use is a disputed material fact. In response to Kemper's motion for summary judgment, plaintiff declared that Amy had quit smoking in 1991 (more than three years before her life insurance application) and, apart from two cigarettes Amy shared with her sister during the three-year period at issue, she did not resume smoking until after she was diagnosed with terminal cancer in 1997, the year after submitting her application. Plaintiff also submitted a corroborating declaration by Amy's sister, Pamela Inouye, who said that to her knowledge the only cigarettes Amy smoked from 1991 to 1997 were a couple of cigarettes the two of them shared. When, as here, a dispositive factual issue is disputed, summary judgment is improper. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 [100 Cal.Rptr.2d 352, 8 P.3d 1089].)

In their briefs, the parties address the question whether the trial court should have granted Kemper's motion for summary adjudication of certain causes of action in plaintiff's amended complaint. The Court of Appeal did not address these issues, for its conclusion that Amy had materially misrepresented the extent of her smoking during the 36 months preceding her application, thus entitling Kemper to rescind Amy's policy, necessarily disposed of plaintiff's entire complaint. Nor were these issues encompassed in our grant of review. We therefore do not consider them here.

---

[2] Although Hoyme testified in his deposition that he did not recall Amy telling him that she had smoked two cigarettes during the 36 months preceding the application, he did remember having "some conversation [with Amy] or a question . . . about, you know, having, you know, a cigarette . . . in the past, you know, at a special function or something like that . . . ." He also said that he often told applicants that "if you have one [cigarette] once or twice a year, then it's probably not a big deal."

## CONCLUSION

We reverse the judgment of the Court of Appeal, and we remand the matter to that court for further proceedings consistent with this opinion.

George, C. J., Baxter, J., Werdegar, J., Chin, J., and Moreno, J., concurred.