**U.S. SPECIALTY INSURANCE COMPANY, Plaintiff,**

v.

**BRIDGE CAPITAL CORPORATION, et al., Defendants.**

**Bridge Capital Corporation, et al., Counter–Claimants,**

v.

**U.S. Specialty Insurance Company, et al. Counter–Defendants.**

**No. SACV 06–85 CJC (ANX).**

United States District Court, C.D. California, Southern Division.

April 11, 2007.

Cara Duffield and Mary E. Borja, Wiley Rein and Fielding, Washington, DC, James L. Goldman, Pircher Nichols & Meeks, Los Angeles, CA, for Plaintiff.

Kyle Kubisch and Lily Chow, Picker Chow and Freisleben, Irvine, CA, for Defendants.

**ORDER GRANTING PLAINTIFF AND COUNTERCLAIM DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

CARNEY, District Judge.

## I. INTRODUCTION

This case arises out of the rescission of two director and officer liability insurance policies issued by Plaintiff U.S. Specialty Insurance Company ("U.S.Specialty")[1] to Defendants Bridge Capital Corporation ("Bridge Capital"), Bridge Capital Leasing, Inc. ("Bridge Leasing"), Mohammad Ahmari a/k/a Mike Ahmari, and Payam C.

---

1. Defendants filed a counterclaim against U.S. Specialty and Counterclaim Defendants Houston Casualty Company and HCC Global Financial Products. These parties will be referred to collectively as U.S. Specialty.

Behechti a/k/a Paul Behechti (collectively, "Defendants"). U.S. Specialty argues that the rescission was proper because Defendants failed to disclose material facts, rendering the policies void *ab initio*. Defendants contend that their disclosure was proper under their reading of the insurance application, and that U.S. Specialty's rescission was improper and in bad faith. The Court finds that Defendants knowingly withheld material information from U.S. Specialty, and that the policies were void *ab initio*. Accordingly, U.S. Specialty's motion is GRANTED, and Defendants' motion is DENIED.

## II. FACTUAL BACKGROUND

Defendants sought director and officer and employment practices liability insurance from U.S. Specialty in 2004, and then renewed the policy in 2005. Exh. 11.[2] In January of 2006, U.S. Specialty rescinded both policies on account of Defendants' false and misleading answers to questions 12(a). Question 12(a) seeks disclosure of any claims made against Bridge Capital or any of its officers and directors in the past 5 years. Exh. 11 at 135. On the 2004 application, Defendants disclosed one claim in response to question 12(a): a complaint filed by former employee Heather Trone. Exh. 11 at 139. The Trone action was identified as a frivolous gender discrimination suit that was likely to be resolved with a trivial monetary settlement. Exh. 11 at 138–39. Specifically, Defendants stated the following in an attachment to its 2004 application:

> Since the inception of Bridge Capital 5 years ago, only one claim has been made naming any director or officer as a defendant. The aforementioned case [the Trone matter] was filed November 4, 2003 and is based on gender discrimina-

tion, and is currently pending resolution of settlement/dismissal negotiations that our attorney has predicted will result in a trivial monetary settlement, as the case is frivolous.

Exh. 11 at 138. U.S. Specialty issued a policy to Defendants covering the period from November 15, 2004 through November 15, 2005. Exh. 16.

When Defendants renewed their policy in 2005, they once again submitted an application to U.S. Specialty. Exh. 17. On the 2005 application, Defendants disclosed an additional claim in response to question 12(a): a gender discrimination action filed by former employee Deidre O'Shea. Exh. 17 at 236. O'Shea also made claims for wrongful termination and sexual harassment, but these claims were not disclosed on the renewal application. *See* Exh. 46 at 510. This lawsuit had been tendered to U.S. Specialty under the 2004 policy. Exh. 45. Defendants also included an appendix of litigated matters in which they identified a complaint filed by Saundra Orlaski and describe the suit as one for unpaid commissions. Exh. 17 at 240. The Trone matter was once again described as a frivolous gender discrimination suit. Exh. 17 at 240.

During the O'Shea litigation, U.S. Specialty had taken responsibility for the costs of the defense under the terms of the policy, and subject to a complete reservation of rights. Exh. 47. Defendants were represented by Dale A. Hudson of Nixon Peabody LLP. On December 8, 2005, Mr. Hudson prepared a comprehensive evaluation of the lawsuit, and presented it to U.S. Specialty for their review. Exh. 41. In it, Mr. Hudson provided a different description of the Trone and Orlaski matters than Defendants had in their insurance ap-

---

2. All Exhibits cited in this order are contained in the Appendix of Exhibits Cited in Motion for Summary Judgment of Plaintiff and Coun- terclaim Defendants U.S. Specialty Insurance Company, HCC Global Financial Products and Houston Casualty Company.

plication. Exh. 41 at 449. Mr. Hudson identified that Ms. Trone's complaint had alleged wrongful termination, sexual harassment, and retaliation. Exh. 41 at 449; *see also* Exh. 38. Similarly, Ms. Orlaski's complaint alleged failure to pay commissions, disability discrimination, sexual harassment, and retaliation. Exh. 41 at 449; *see also* Exh. 34. Mr. Hudson also noted that both were settled for modest sums. Exh. 41 at 449. The letter from Mr. Hudson was the first time U.S. Specialty learned that either Ms. Trone or Ms. Orlaski had accused Defendants of sexual harassment. Mr. Hudson also sent U.S. Specialty a copy of Mr. Ahmari's deposition transcript, in which he identified prior sexual harassment claims brought by Ms. Trone, Ms. Orlaski, and another Bridge Capital employee whose name he could not recall. Exh. 44 at 472–73, 478–81. Further investigation by U.S. Specialty revealed that the third employee was Denise Bukoski, whose allegations of harassment were resolved in 2001 without formal litigation. *See* Exhs. 21–26.

In light of this newly discovered information, U.S. Specialty concluded that Defendants failed to disclose two prior sexual harassment claims on the 2004 application, and misrepresented the third claim as concerning only gender discrimination. Similarly, on the 2005 application, U.S. Specialty failed to disclose one prior sexual harassment claim, and misrepresented the other two as concerning only gender discrimination and unpaid commissions, respectively. U.S. Specialty also determined that the lack of disclosure and misrepresentation had a material effect on the decision to issue the policy. Accordingly, U.S. Specialty informed Defendants that both policies would be rescinded. U.S. Specialty rescinded the policies on January 20, 2006, one day prior to a scheduled mediation in the O'Shea matter. That same day, it filed this action, seeking declaratory relief that the rescission was proper and that the policies were void *ab initio*.

## III. ANALYSIS

Summary judgment is proper if the evidence before the court "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the non-movant's favor, and an issue is "material" when its resolution might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the initial burden of demonstrating that there are no genuine material issues, and that it is entitled to judgment as a matter of law. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir.1987). Once this burden has been met, the party resisting the motion "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). The court does not make credibility determinations, nor does it weigh conflicting evidence. *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992).

"The rule in insurance cases is that a material misrepresentation or concealment in an insurance application, whether intentional or unintentional, entitles the insurer to rescind the insurance

policy *ab initio.*" *W. Coast Life Ins. Co. v. Ward,* 132 Cal.App.4th 181, 186–87, 33 Cal. Rptr.3d 319 (2005) (*citing O'Riordan v. Fed. Kemper Life Assurance,* 36 Cal.4th 281, 286–87, 30 Cal.Rptr.3d 507, 114 P.3d 753 (2005)). This rule has been codified in the California Insurance Code. *See* Cal. Ins. Code § 331. "Materiality is determined solely by the probable and reasonable effect which truthful answers would have had on the insurer." *Thompson v. Occidental Life Ins. Co.,* 9 Cal.3d 904, 916, 109 Cal.Rptr. 473, 513 P.2d 353 (1973); *see also* Cal. Ins. Code § 334. The fact that an insurer has demanded answers to specific questions on an application for insurance is usually sufficient to establish the materiality of that information as a matter of law. *Ward,* 132 Cal.App.4th at 187, 33 Cal.Rptr.3d 319 (*quoting Old Line Life. Ins. Co. v. Superior Court,* 229 Cal.App.3d 1600, 1603–04, 281 Cal.Rptr. 15 (1991)). Summary judgment may be granted for the insurer where the only reasonable inference to be drawn from the evidence is that the misrepresentations and omissions of the insured were material to the decision to issue the policies. *Id.* (*quoting Imperial Cas. & Indem. Co. v. Sogomonian,* 198 Cal.App.3d 169, 182, 243 Cal.Rptr. 639 (1988)).

▉ Having considered the evidence in the light most favorable to Defendants, it is undisputed that Defendants made misrepresentations and omissions on the two insurance applications, and that those misrepresentations and omissions were material to U.S. Specialty's decision to issue the policy. At the time Defendants filled out the 2004 application, they had knowledge of three prior sexual harassment claims against Mr. Ahmari. Only one of these was disclosed on the application, and it was described only as a frivolous gender discrimination claim. Similarly, Defendants had knowledge of four sexual harassment claims when they filled out the 2005 application. The Trone claim was again described as a gender discrimination claim, the Orlaski matter was misrepresented as only an action for unpaid commissions, and even the O'Shea matter, which had been tendered to U.S. Specialty, was only described as a gender discrimination claim. The Bukoski claim was never disclosed to U.S. Specialty. Moreover, it is clear that U.S. Specialty relied on these misrepresentations and omissions when it issued Defendants the policies. The undisputed testimony of the several employees of U.S. Specialty responsible for issuing the two policies is that they would not have extended coverage to Defendants had they known of Mr. Ahmari's alleged history of sexual harassment. *See* Declaration of Lori Seiser, ¶¶ 9–12; Declaration of Kristin Mow, ¶¶ 7–8.

Defendants contend that the term "claim" in question 12(a) was undefined in the application, and that they believed it to refer only to complaints formally filed in court. Accordingly, they argue that their answers were complete and proper under their construction of the question. However, under California law, the term "claim" has a well established, unambiguous definition. It is defined as "the assertion of a liability of the party, demanding that the party perform some service or pay some money." *Abifadel v. Cigna Ins. Co.,* 8 Cal.App.4th 145, 160, 9 Cal.Rptr.2d 910 (1992); *see also San Pedro Props., Inc. v. Sayre & Toso, Inc.,* 203 Cal.App.2d 750, 755, 21 Cal.Rptr. 844 (noting that claim, in its ordinary sense, imports "the assertion of a liability to the party making it to do some service or pay some sum of money"). It is undisputed that counsel for Ms. Bukoski, Ms. Orlaski, and Ms. Trone all made formal demands for money against Defendants, asserting liability for sexual harassment on the part of Defendants, during the 5 year time period covered by question 12(a). Thus, they were claims that should

have been disclosed on the application.[3] The use of the term "claim" in the question 12(a) was not ambiguous, and Defendants' interpretation of that term was unreasonable under California law.

Defendants also argue that they put U.S. Specialty on notice of the Trone and Orlaski claims, and any failure to obtain further information about those claims was the fault of U.S. Specialty. This argument is unavailing. First, U.S. Specialty did in fact follow up with regard to the Trone matter, only to be told yet again that it was merely a frivolous gender discrimination suit. Exh. 13. While the suit may have in fact been frivolous, Defendants never disclosed that sexual harassment was among the allegations. Exh. 13. Thus, even when U.S. Specialty requested further information from Defendants regarding the Trone claim, Defendants continued to withhold material information. Second, Defendants' description of the Orlaski suit as one solely for unpaid commissions would in no way put U.S. Specialty on notice of possible allegations of sexual harassment. There is no inherent relation between unpaid commissions and sexual harassment such that disclosure of the former would give U.S. Specialty any reason to investigate the existence of the latter. Indeed, an unpaid commissions claim falls completely outside of the scope of the insurance policy that Defendants were seeking. Exh. 7 at 66 (Kristin Mow Deposition 33:8–12).

■ The Court also finds that all Defendants had knowledge of the prior sexual harassment claims. It is undisputed that Mr. Ahmari, Bridge Capital's CEO, had personal knowledge of each prior claim, and the steps taken by Bridge Capital to resolve them. Under the policies, knowledge of "material facts or information known to the person or persons who signed the application" would be imputed to all insureds. *See* Exh. 16 at 231, Exh. 18 at 284. Mr. Ahmari signed the two insurance applications. Exh. 15 at 212, Exh. 17 at 238. Accordingly, his knowledge is imputed under the policy to the other insureds, such that the policy is void *ab initio* as to all of them. *See TIG Ins. Co. of Mich. v. Homestore, Inc.*, 137 Cal. App.4th 749, 756, 40 Cal.Rptr.3d 528 (2006) (permitting rescission of coverage under a similar partial severability clause against certain insureds without actual knowledge of misrepresentations where the signer of the insurance policy knew of material misrepresentations in the application).

■■ Finally, U.S. Specialty is entitled to summary judgment on Defendants' counterclaims. Since the policies are void *ab initio*, Defendants cannot bring a claim for breach of contract or breach of the implied covenant of good faith and fair dealing arising out of those insurance policies. *See Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir.2001). Also, Houston Casualty Company and HCC Global Financial Products are entitled to summary judgment on Defendants' intentional interference with contractual relations claim. The undisputed evidence establishes that these counterclaim defendants were agents of U.S. Specialty, and neither parties to the insurance contracts nor agents of those parties may be held liable

---

**3.** Moreover, even if Defendants' construction of the term "claim" were supportable, it would not excuse their failure to fully and correctly answer question 12(b). Question 12(b) asks: "Is any person or entity proposed for this insurance aware of any fact, circumstance or situation involving the Applicant or any Insured Person or Organization which he, she or it has reason to believe might result in a claim being made?" Exh. 11 at 135. The presence of the Orlaski demand letter, which threatened litigation, is clearly a fact or circumstance that might give rise to a claim under the policy that was known to Defendants at the time they submitted the 2004 application.

for tortious interference with contract. *See Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal.4th 503, 517–18, 28 Cal. Rptr.2d 475, 869 P.2d 454 (1994); *Reynolds v. Bement,* 36 Cal.4th 1075, 1087, 32 Cal.Rptr.3d 483, 116 P.3d 1162 (2005).

## IV. CONCLUSION

The two policies issued by U.S. Specialty to Defendants are void *ab initio* on account of the material misrepresentations made by Defendants, and specifically Mr. Ahmari, in the insurance applications. Accordingly, U.S. Specialty's rescission of the policies was proper, and it is entitled to summary judgment.