Filed 6/12/17; pub. & mod. order 6/29/17

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| VICTOR DUARTE,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>PACIFIC SPECIALTY INSURANCE COMPANY,<br><br>        Defendant and Respondent. | A143828<br><br>(Alameda County<br>Super. Ct. No. RG13687803) |

Not long after Victor Duarte bought an insurance policy from Pacific Specialty Insurance Company (Pacific) to cover a rental property he owned, he was sued by his tenants. When Pacific refused to defend him against the tenants' claims, Duarte sued Pacific, seeking, among other things, a declaration that Pacific was required to defend him in the tenant suit. The trial court granted Pacific's motion for summary judgment, ruling that Pacific was entitled to rescind the policy because Duarte "made material misrepresentations and/or concealed material facts" when he applied for the policy and that rescission rendered the policy unenforceable from the outset, and therefore Duarte never had any coverage and was not entitled to any benefits from the policy. The "misrepresentations" at issue here concern Duarte's responses of "no" to questions 4 and 9 in the insurance application. Question 4 is, at best, ambiguous: "Has damage remained unrepaired from previous claim and/or pending claims, and/or known or potential (a) defects, (b) claim disputes, (c) property disputes, and/or (d) lawsuits?" Question 9 is more straightforward: "Is there any type of business conducted on the premises?"

1

Duarte appeals, arguing that Pacific did not establish as a matter of law that it was entitled to rescind the policy. We agree with Duarte, and therefore we reverse and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are undisputed. In 2001, Victor Duarte bought property at 1825 East 19th Street in Oakland (the property). Steven Bowers, who occupied the house on the property at that time, entered a rental contract with Duarte and remained at the property as a tenant. At some point, Bowers's daughter, Jennifer Pleasants, moved into the property, and she remained there after Bowers died in about 2010. In February 2012, Duarte gave Pleasants a 45-day notice to quit, but she did not leave.[1] On April 19, just two months later, Duarte applied for landlord-tenant insurance coverage for the property with Pacific through Yin Tang Insurance.[2] The application was submitted electronically, and the same day, Pacific issued Duarte a policy on the property that included "Owners, Landlords & Tenants Liability Coverage," effective April 19, 2012 to April 19, 2013 (the policy).

In June 2012, Pleasants and Jeremy Mueller filed a lawsuit against Duarte in superior court (tenant suit), setting out 10 causes of action arising from habitability defects that had allegedly existed throughout their tenancy, which began in 2009. Claiming that they had notified Duarte about the defects, and that they suffered emotional distress and physical injury, overpayment of rent and out-of-pocket expenses, they sought to recover damages, attorneys' fees and costs.

In August 2012, Duarte tendered defense of the tenant suit to Pacific, which denied coverage and refused to defend the suit. In July 2013, after several months of

___

[1] Pleasants was still occupying the property in July 2014.

[2] In his declaration, Duarte states, "I filled out and submitted an application for the Policy with the help of Tang." At his deposition, Duarte testified that he visited Ms. Tang's office, which was a few blocks from his house; that she asked him questions and that she typed things into a computer while he spoke with her; and that he signed the insurance paperwork before he left the office.

correspondence with Pacific, Duarte sued Pacific in superior court seeking a declaration that the policy required Pacific to defend Duarte in the tenant suit and also seeking damages for breach of contract and tortious breach of insurance contract, on the grounds that Pacific not only failed to defend the tenant suit, but also "wrongfully cancelled" his policy. Pacific answered with a general denial, and alleged a number of affirmative defenses, including its "right to rescind the policy in its entirety since inception because of material misrepresentations, fraud and/or concealment of material facts made by plaintiff on the application."

In March 2014, Duarte filed a motion for summary adjudication on his claim for declaratory relief, arguing he was entitled to a ruling that Pacific owed him a duty to defend the tenant lawsuit. On the same day, Pacific filed a motion for summary judgment or, in the alternative, summary adjudication, arguing it was entitled to rescind the policy because Duarte made material misrepresentations in his application for insurance. Pacific argued that when Duarte applied for coverage in April 2012 he answered "no" to question 4, thereby representing that there were no disputes concerning the property even though he knew there was a dispute with the tenants about the property as evidenced by his responses the previous month to a complaint made by tenants to the City of Oakland, and he answered "no" to question 9, thereby representing to Pacific that there was no business conducted on the property even though just a month earlier "he advised the City of Oakland that the tenants had 'opened a shop,' were conducting 'dangerous' welding activities, and were selling goods in connection therewith." Pacific also argued that Duarte's contract claim failed because the tenant suit did not give rise to coverage under the policy, that Duarte's tort claim failed because there was no coverage for the tenant suit and it had acted reasonably in denying Duarte's tender, and that Duarte had no tort claim for the non-renewal of the policy.[3] The motions were scheduled for

---

[3] In February 2013, Pacific issued a notice of non-renewal for the policy, stating that Duarte had failed to comply with a request Pacific made months earlier for information about the number of units on the property.

3

hearing on May 21, 2014. The parties filed opposition papers on May 7 and replies on May 16.

Duarte's opposition to Pacific's motion and his reply to Pacific's opposition rested in part on arguments that Pacific impermissibly relied on documents subpoenaed from the City of Oakland (Oakland records) to prove its rescission defense. Duarte objected that the Oakland records, which were attached as an exhibit to a declaration from Pacific's attorney, were unauthenticated and constituted inadmissible hearsay.

In advance of the scheduled hearing, the trial court published a tentative ruling that continued the hearing on Pacific's motion "because [Pacific] filed the motion prematurely." The court stated that Pacific could not "establish that [Duarte] concealed material facts or made material misrepresentations in his insurance application by submitting unauthenticated records." The court ordered Pacific to "conduct additional discovery and file supplemental papers in support" of its motion by September 8, 2014, set a schedule for the parties to file supplemental opposition and reply papers, and continued the hearing to October 8, 2014. The trial court also published a tentative ruling continuing Duarte's motion to October 8 without explanation, but presumably because the motions were related and Pacific's opposition to Duarte's motion relied in part on the same records as Pacific's own motion. The tentative rulings were not contested and became orders of the court on May 21, 2014.[4]

---

[4] The court apparently acted on its own initiative. Nothing in the record suggests that either party had requested a continuance on any grounds, including Code of Civil Procedure section 437c, subdivision (h). On appeal, Duarte contends that the court should not have continued the hearing, but rather should have denied Pacific's motion and ruled on his. Duarte did not assert this position in the superior court until August 2014, three months after the order continuing the summary judgment hearing and two months before the continued hearing, when he submitted an ex parte application to shorten time on the hearing of his motion for summary adjudication, which was denied. Duarte did not file a writ petition to challenge the continuance, and he does not challenge the denial of his ex parte motion.

On appeal, Duarte argues for the first time that the orders continuing the hearing were procedurally improper and prejudicial to him. The trial court's orders were unorthodox. It appears that the trial court could have ruled promptly on Duarte's motion

4

Pacific and Duarte filed their supplemental papers on Pacific's motion in September. This time, Pacific's papers included a declaration from Connie Taylor, a manager of the Rent Adjustment Program (the Rent Program) in City of Oakland's Department of Housing and Development. She attached a copy of the Oakland records, stating that the documents were a true and correct copy of the Rent Program's file for case T12-0066, in which Pleasants filed a tenant petition with the Rent Program identifying Duarte as her landlord. Pacific also included a transcript of Duarte's deposition.

In advance of the scheduled hearing, the trial court published tentative rulings on both motions, granting Pacific's and denying Duarte's. The tentative rulings were not contested, no hearing was held, and the tentatives became orders of the court. In the order granting Pacific's motion, the court ruled that Pacific was entitled to rescind the policy because Duarte made material misrepresentations or concealed material facts in response to Pacific's underwriting questions; and it declined to rule on Pacific's

for a declaration that Pacific had a duty to defend. An insurer's " 'duty to defend begins when a potential for coverage arises, and the duty continues *until the insurer proves otherwise.*' " (*Haskel, Inc. v. Superior Court* (1995) 33 Cal.App.4th 963, 977 (*Haskel*), quoting *Hartford Accident & Indemnity Co. v. Superior Court* (1994) 23 Cal.App.4th 1774, 1781.) If Duarte could show a potential for coverage and Pacific could not meet its burden to prove otherwise, Duarte's motion could have been granted. Pacific would have retained the right "to seek a contrary ruling at *any time* it acquire[d] the requisite evidence to conclusively eliminate any potential for coverage." (*Haskel*, *supra*, 33 Cal.App.4th at p. 978.) Such a ruling would have relieved Pacific of its obligation to continue to defend. (*Id.* at p. 977.) However, Duarte has not shown that the continuance constitutes reversible error. Duarte contends that the trial court's request for supplemental briefing improperly reduced the minimum notice requirements of the summary judgment statute by giving him "less than 14 days to respond to what was effectively an entirely new summary judgment motion," which restricted his ability to file an effective opposition. Even if Duarte could show that Pacific's supplemental briefing constituted an entirely new motion, Duarte forfeited this argument, because he did not raise it in the trial court. (*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184-185, fn. 1.)

alternative grounds for summary judgment.[5]  In the order denying Duarte's motion, the court cited *Imperial Casualty & Indemnity Company v. Sogomonian* (1988) 198 Cal.App.3d 169, 182 (*Imperial Casualty*) for the proposition that "a rescission effectively renders the policy totally unenforceable from the outset so that there was never any coverage and no benefits are payable," and explained that Duarte's motion was denied because Pacific's motion for summary judgment had been granted.

Judgment was entered for Pacific, and Duarte timely appealed, arguing that Pacific failed to prove its rescission defense, and that his motion for summary adjudication "should have been granted, assuming [Pacific's] rescission defense fails."  Duarte asks us to rule on his summary adjudication motion or remand the motion to the trial court for a ruling.[6]

---

[5] On appeal, neither party argues Pacific's alternative grounds for summary judgment.  We do not discuss them further.

[6] After the appeal was fully briefed, Duarte submitted two unopposed requests that we take judicial notice of the decision in *Roepel v. Pacific Specialty Insurance Company* (Mar. 14, 2013, B230306) [nonpub. opn.] (*Roepel*).  We took the requests under submission and now deny them.

Duarte initially asked us to take judicial notice of the decision pursuant to Evidence Code section 452, subdivision (a), which in conjunction with Evidence Code section 459 permits us to take judicial notice of the decisional law of any state.  But Duarte does not ask us to take notice of any law or legal principle.  Rather, he asks us to take notice of testimony from Susan Valencia, who testified for Pacific in *Roepel* as well as here.  Duarte argues that *Roepel* is relevant to the interpretation of underwriting question 4 in this case, as well as to Pacific's "credibility," because in *Roepel* Valencia discussed the significance of an underwriting question that is identical to question 4 and interpreted it differently.  We deny the request for judicial notice because "we cannot take judicial notice of the truth of hearsay statements in other decisions, or court files [citation], or of the truth of factual findings made in another action." (*Johnson & Johnson v. Superior Court* (2011) 192 Cal.App.4th 757, 768.)  Moreover, *Roepel* concerned a different portion of the question than this case, and in any event Valencia's testimony in *Roepel* is not inconsistent with her testimony here.

In a supplemental request, Duarte asks us to take judicial notice of the *Roepel* decision pursuant to Evidence Code section 452, subdivision (d)(1), which allows courts to take judicial notice of the records of any court in this state.  Duarte relies on *Gilbert v. Master Washer & Stamping Co.* (2001) 87 Cal.App.4th 212, 217-218, footnote 14

6

A.      *Standard of Review*

A party is entitled to summary judgment "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) "We review a grant of summary judgment de novo; we must decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law." (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348.) The evidence must be viewed in the light most favorable to the nonmoving party. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.) In deciding whether a material factual issue exists for trial, we "consider all of the evidence set forth in the papers, except the evidence to which objections have been made and sustained by the court, and all inferences reasonably deducible from the evidence." (Code Civ. Proc., § 437c, subd. (c).) "Pursuant to the weight of authority, appellate courts review a trial court's rulings on evidentiary objections in summary judgment proceedings for abuse of discretion. [Citations.]" (Eisenberg, et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2016) ¶ 8.168, p. 8-146.)[7] The party challenging a trial court's evidentiary ruling has the

---

(*Gilbert*) to support his argument that we should take judicial notice of the *Roepel* decision "for the limited purpose of any persuasive value therein." Duarte's reliance on *Gilbert* is misplaced. The court in *Gilbert* did not take judicial notice of an unpublished opinion for the purpose of its persuasive value; rather, the purpose of the judicial notice was to clarify a Supreme Court decision by citing to facts in the earlier appellate court decision in the same matter. (*Ibid.*) *Gilbert* therefore provides no basis for taking judicial notice of the *Roepel* decision for its persuasive value.

While we might take judicial notice of the fact that the *Roepel* decision was issued or the fact that the trial court judgment in favor of Pacific in that case was affirmed in its entirety, we do not find such notice to be necessary, helpful or relevant, and therefore we deny Duarte's supplemental request. (See *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 748, fn. 6 [denying request where judicial notice is not necessary, helpful or relevant].)

[7] The parties agree that the abuse of discretion standard is appropriate for our review of the trial court's rulings on the evidentiary objections in this case.

"burden to establish such an abuse, which we will find only if the trial court's order exceeds the bounds of reason. [Citation.] 'Where a trial court has discretionary power to decide an issue, an appellate court is not authorized to substitute its judgment of the correct result for the decision of the trial court.' [Citation.] We will only interfere with the lower court's judgment if appellant can show that under the evidence offered, ' "no judge could reasonably have made the order that he did." ' " (*DiCola v. White Bros. Performance Products, Inc*. (2008) 158 Cal.App.4th 666, 679 [reviewing trial court's evidentiary rulings on summary judgment].)

A defendant "moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that [the defendant] is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).) A defendant can meet this burden by showing "that there is a complete defense to [a] cause of action." (Code Civ. Proc., § 437c, subd. (p)(2).) A defendant's initial burden in moving for summary judgment is to come forward with evidence to make a prima facie showing that there is no triable issue of material fact (*Aguilar*, *supra*, 25 Cal.4th at p. 850), where the material facts are determined by the pleadings. (*Fisherman's Wharf Bay Cruise Corp. v. Superior Court* (2003) 114 Cal.App.4th 309, 320.) If defendant meets that burden of production, the burden of production shifts to plaintiff to make a showing that there is a triable issue of material fact. (*Ibid.*) "The plaintiff . . . shall not rely upon the allegations or denials of its pleadings to show that a triable issue of material facts exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists." (Code Civ. Proc., § 437c, subd. (p)(2).) "A party cannot avoid summary judgment by asserting facts based on mere speculation and conjecture, but instead must produce admissible evidence raising a triable issue of fact." (*LaChapelle v. Toyota Motor Credit Corp.* (2002) 102 Cal.App.4th 977, 981.)

B.    *Applicable Law*

Our Supreme Court has explained that the law of rescission applies to insurance contracts in the following way: "It is generally held that an insurer has a right to know all that the applicant for insurance knows regarding the state of his health and medical

8

history. [Citations.] Material misrepresentation or concealment of such facts are grounds for rescission of the policy, and an actual intent to deceive need not be shown. [Citations.] . . . Materiality is determined solely by the probable and reasonable effect which truthful answers would have had upon the insurer. [Citations.] The fact that the insurer has demanded answers to specific questions in an application for insurance is in itself usually sufficient to establish materiality as a matter of law. [Citations.]" (*Thompson v. Occidental Life Insurance Co.* (1973) 9 Cal.3d 904, 915-916.)

This general principle applies as well to first party property claims and claims on liability insurance policies. (*Imperial Casualty, supra*, 198 Cal.App.3d at pp. 174-175, 180-181.) The insurer is not required to show a causal relationship between the material misrepresentation or concealment of material fact and the nature of the claim. (*Ibid.* [insurer entitled to rescind policy because homeowners failed to disclose prior land subsidence and water damage claims even though the loss at issue was by fire].) Nor must the misrepresentation be intentional: an insurer is entitled to rescind a policy "based on an insured's negligent or unintentional concealment or misrepresentation of a material fact." (*Mitchell v. United National Insurance Company* (2005) 127 Cal.App.4th 457, 473.) This is because the focus of the inquiry is not on the state of mind of the insured or applicant, but on "the probable and reasonable effect which truthful answers would have had upon the insurer." (*Merced County Mutual Fire Ins. Co. v. State of California* (1991) 233 Cal.App.3d 765, 772, citing Ins. Code, § 334.)

Thus, false representation or concealment in connection with an application for insurance provide grounds for rescission of an insurance contract from the outset. (Civ. Code, § 1689, subd. (b)(7); Ins. Code, §§ 331, 359; *Imperial Casualty*, *supra*, 198 Cal.App.3d at p. 182 ["rescission effectively renders the policy totally unenforceable from the outset to that there was never any coverage and no benefits are payable"].)

The interpretation of an insurance policy is a question of law. (*Waller v. Truck Insurance Exchange, Inc.* (1995) 11 Cal.4th 1, 18). We "look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." (*Ibid.*) A provision in a policy is considered ambiguous when it

9

is capable of two or more constructions, each of which is reasonable. (*Ibid.*) We construe ambiguities against the insurer, as drafter of the policy. (*State of California v. Continental Insurance Company* (2012) 55 Cal.4th 186, 195.) These principles apply likewise to the questions in an application prepared by an insurer. Therefore, although an insurer generally "has the right to rely on the applicant's answers without verifying their accuracy[,] . . . [¶] . . . [t]he insurer cannot rely on answers given where the applicant-insured was *misled* by vague or ambiguous questions." (Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2016) ¶¶ 5:217, 5:218, p. 5-64 (Croskey).) Croskey provides several "[e]xamples of 'inartful' questions in insurance applications," including questions with "ambiguous" or "unfamiliar" terms, and questions "lumping together many different conditions." (*Id.* ¶ 5:218, p. 5-64, italics omitted.)

C.    *Analysis*

    1.    *Pacific's Motion Was Not Procedurally Defective*

We begin by addressing Duarte's arguments that Pacific's motion for summary judgment was procedurally improper. The arguments lack merit.

Duarte argues that because Pacific never filed a pleading seeking affirmative declaratory relief, it was improper for Pacific to seek—and for the court to grant—such affirmative relief by a motion for summary judgment. Duarte's argument is based on statements in Pacific's motion asking the court to rule that it "is entitled to rescind" the policy and on the trial court's statements that it agreed with Pacific's "contention that it has the statutory right to rescind the liability policy issued to [Duarte]," and that Pacific "is entitled to rescind the subject policy,"[8] This argument is a makeweight. Pacific

---

[8] Along the same lines, Duarte quotes a portion of the trial court's order ("The Motion of Defendant Pacific Specialty Insurance Company ('PSIC') for Summary Judgment or, in the Alternative, Summary Adjudication of Issues, as to the Complaint of Plaintiff Victor Duarte for Breach of Contract, Tortious Breach of Insurance Contract ('Bad Faith'), and Declaratory Relief, pursuant to CCP § 437c, is GRANTED"), and suggests that Pacific's motion was thus a motion for declaratory relief. The suggestion is meritless. The phrase "and Declaratory Relief" is not a description of Pacific's motion, but is rather a description of Duarte's complaint, which as its caption reflects, alleges

10

alleged as an affirmative defense that it "had the right to rescind the policy in its entirety since inception because of material misrepresentations, fraud and/or concealment of material facts made by plaintiff on the application." Pacific's defense of rescission would justify an award of summary judgment if there were no triable issue of fact that Duarte made a material misrepresentation on his application. (*Superior Dispatch, Inc. v. Insurance Corp. of New York* (2010) 181 Cal.App.4th 175, 181 (*Superior Dispatch*). Duarte cites to no authority to the contrary.

Duarte argues that Pacific's motion must fail because Pacific did not plead or prove that it gave notice it was rescinding the policy or that it returned, or offered to return, the premium paid. (Civ. Code, § 1691, subds. (a)-(b).) Although Civil Code section 1691 states that notice and restoration of the premium are procedural requirements for rescission, Duarte's arguments lack merit. That is because Pacific pleaded a rescission defense in its answer, and Civil Code section 1691 provides that "[w]hen notice of rescission has not otherwise been given or an offer to restore the benefits received under the contract has not otherwise been made, the service of a pleading in an action or proceeding that seeks relief based on rescission shall be deemed to be such notice or offer or both." (Croskey, *supra*, ¶¶ 5:157.4, p. 5-45, *LA Sound USA, Inc. v. St. Paul Fire & Marine Ins. Co.* (2007) 156 Cal.App.4th 1259, 1267 (*LA Sound*).) Duarte argues that an answer that merely pleads an affirmative defense of rescission does not adequately plead notice and offer for the purposes of Civil Code section 1691, but the only authority that he cites to support that argument is inapposite. Duarte cites *Myerchin v. Family Benefits, Inc.* (2008) 162 Cal.App.4th 1526, 1533 (*Myerchin*) for the proposition that pleading an affirmative defense of rescission in an answer does not meet the requirements of Civil Code section 1691 unless the answer alleges facts demonstrating a rescission has been effected.[9] *Myerchin* is unlike the case here because

"Breach of Contract," "Tortious Breach of Insurance Contract," and "Declaratory Relief."

[9] *Myerchin* was disapproved on other grounds by *Village Northridge Homeowners Assn. v. State Farm Fire and Casualty Co.* (2010) 50 Cal.4th 913, 929, footnote 6.

the deficient answer in *Myerchin* "d[id] not even mention, let alone assert, a rescission." (*Ibid.*) Furthermore, Duarte waived any defect in the pleadings by addressing the rescission defense on the merits in opposing Pacific's motion. (*Superior Dispatch*, *supra*, 181 Cal.App.4th 175 at p. 193, fn. 11.)

In his opening brief, Duarte suggests that Pacific could not prevail on a rescission defense because it should have filed a cross-complaint to rescind the policy, but cites no authority to support the point, and we are aware of none. It is well established that although an insurer may not file a separate action for rescission once the insured has filed suit, the insurer may assert rescission as an affirmative defense *or* in a cross complaint. (Croskey, *supra*, ¶¶ 5:157.1 – 5:157.3, pp. 5-44 – 5-45, citing *Resure, Inc. v. Superior Court* (1996) 42 Cal.App.4th 156, 166, and *LA Sound*, *supra*, 156 Cal.App.4th at pp. 1267-1268.) In his reply brief, Duarte concedes that "a pleading (even an answer) can effectuate notice of rescission," but qualifies his concession by arguing that rescission must be "properly pled." (Italics omitted.) The qualification does not help him, since he addressed the defense on the merits and therefore waived any pleading defect. (*Superior Dispatch*, *supra*, 181 Cal.App.4th at p. 193, fn. 11.)

Duarte argues that Pacific failed to "adequately identify, articulate, and support" the misrepresentation element of its rescission defense in its separate statement or briefs, and this failure was "highly prejudicial" to Duarte's ability to oppose Pacific's motion. The argument lacks merit. Duarte's sole citation to supporting authority is a glancing reference to Code of Civil Procedure section 437c, subdivision (b)(1), which requires a moving party to set forth "plainly and concisely all material facts which [it] contends are undisputed." Duarte's contention that Pacific never identified Duarte's alleged factual misrepresentations is belied by Pacific's detailed recitation of facts in its opening brief to the trial court, which identified facts in its separate statement establishing its position that Duarte made misrepresentations when he answered "no" to questions 4 and 9 on the application, because when he applied for coverage, "he knew that there was a dispute with the tenants about conditions at the subject property" and that he had recently "complain[ed] to the City of Oakland that his tenants were conducting a dangerous

12

welding/shop business on the property." Duarte's contention that he was prejudiced by the alleged deficiencies is belied by the detailed argument in his initial opposition papers, in which he contends that he answered questions 4 and 9 truthfully, relying on his declaration, in which he explains his understanding of the questions and the reasons for his answers.

Duarte argues that Pacific's failure to identify the misrepresentation element of its rescission defense prevents it from meeting its burden to establish the materiality element of its defense. Our conclusion that Pacific adequately identified alleged Duarte's misrepresentations, discussed immediately above, means that Duarte's argument here rests on a faulty premise.

### 2. *Pacific Did Not Meet Its Initial Burden*

To prevail on its rescission defense, Pacific has the burden to prove that in his application for insurance Duarte, whether intentionally or not, made a misrepresentation, and that Pacific would not have issued the policy if Duarte had not made that misrepresentation. (*Douglas v. Fidelity National Insurance Co.* (2014) 229 Cal.App.4th 392, 408; see also CACI No. 2308.) Here, Pacific argues that Duarte misrepresented that there were no pending claims or known or potential property disputes or lawsuits and also misrepresented that no business was conducted on the property. We conclude that Pacific did not meet its initial burden with respect to those purported misrepresentations. As we discuss below, Pacific cannot rely on question 4 to elicit information about the existence of pending claims, property disputes, or lawsuits concerning the property. And Pacific has not met its burden to show that Duarte knew a "business" was conducted on the property at the time he submitted his application.

### a. *Undisputed Facts*

The following facts are undisputed. The application sets forth underwriting guidelines, with a list of "unacceptable properties" that includes "[d]wellings with unrepaired damage (including earthquake damage) and/or open or pending claims, and/or known or potential (a) defects, (b) claim disputes, (c) property disputes, and/or (d) lawsuits." The guidelines also contain a list of "unacceptable risks" that includes "[r]isks

13

where space is rented to others for commercial use or risks with any type of business (including childcare provided to unrelated individuals for compensation), trade or illegal activity on the premises."  In his application Duarte answered "no" to underwriting question 4, "Has damage remained unrepaired from previous claim and/or pending claims, and/or known or potential (a) defects, (b) claim disputes, (c) property disputes, and/or (d) lawsuits?"  Duarte also answered "no" to the underwriting question 9, "Is there any type of business conducted on the premises?"  Duarte certified that he reviewed the entire application for insurance, that his answers were true and correct, and that he received, read and understood the application, including the underwriting guidelines that were included in it.

There is no triable dispute that if Duarte had answered "yes" to question 4 or 9 during the application process, his application would have been rejected and the application process would have terminated.  Pacific offered the declaration of Susan Valencia, Pacific's Senior Vice President of Underwriting, stating that she was familiar with Pacific's underwriting operations and application process, and that if Duarte had answered "yes" to either question, the policy would not have been issued.  Duarte's contentions that Pacific misrepresented the contents of the declaration and that the declaration is "conclusory" are without merit.[10]  Duarte's argument that the trial court

_____

[10] Duarte relies on a wrongful death case, *Sesma v. Cueto* (1982) 129 Cal.App.3d 108, for his argument that Valencia's declaration is conclusory.  That case is inapposite. An action for wrongful death requires that the child be born alive (*id.* at p. 113), and the defendant doctor in *Sesma* sought summary judgment based in part on his declaration that plaintiff Sesma gave birth to "a stillborn fetus." (*Id.* at p. 112.)  There, the doctor's declaration did not meet the requirement for evidentiary facts because it said nothing about "the child's vital signs, such as breathing, heartbeat, signs of cerebration, muscular activities or lack thereof," and the parents' "attempts to gain such facts from the doctor were unsuccessful." (*Id.* at p. 114.)  Further, medical records and other testimony supported the inference that "the fetus was viable at the time or very close to the time of delivery." (*Ibid.*)  On that record, the trial court should not have concluded that there was no triable issue of material fact. (*Ibid.*)  Here, in contrast, Valencia did not offer conclusory testimony.  She did not testify simply that the answer to question 4 was "material" or "important" or "significant" to Pacific.  To the contrary, she testified that if Duarte had answered the question "yes," his application would have been rejected, which

14

need not believe Valencia's testimony is insufficient to raise a triable issue of fact. (See *Imperial Casualty*, *supra*, 198 Cal.App.3d at pp. 181-182 [review of insurance company's uncontradicted evidence supporting materiality establishes materiality as a matter of law, even in the face of argument that jury might disbelieve the evidence].)

     b.     *Question 4: Claims, Property Disputes, Lawsuits*

As evidence that Duarte knew of open or pending claims, or potential property disputes or lawsuits, Pacific offered deposition testimony from Duarte and documents from the City of Oakland regarding Duarte's attempt to evict Pleasants from the property in February 2012; Pleasants's subsequent complaint about issues at the property to the Rent Program; Duarte's March 2012 response to the Rent Program, which described Pleasants's tenancy and Duarte's reasons for his demand that she vacate the property; and a notice mailed to Duarte on April 3, 2012 scheduling a mediation and hearing for June 4, 2012 on the dispute between him and Pleasants.[11]

In her March 2012 complaint to the Rent Program, Pleasants said that in 2002 Duarte doubled the rent from $700 to $1,400 per month and stopped paying for water and garbage. She said there had been no heat at the property for at least five years, the roof leaked, the plumbing leaked, there was mildew, the floor boards were coming apart, there were pests, including possums and birds, in the attic and she had been requesting repairs in writing since 2009. She said Duarte was evicting her in retaliation.

In his March 2012 response to the Rent Program, Duarte stated that Pleasants had been renting the house from him since 2010 for $1,400 per month, but had refused to sign

_____

establishes that the information about pending disputes requested by Pacific, and not disclosed by Duarte, was material.

[11] The dispute was still pending when Duarte submitted his application to Pacific on April 19, 2012, as reflected in Duarte's handwritten letter to the Rent Program dated April 26, 2012, in which Duarte stated that he "spoke with Inspector Wing Lew in order to solve the problems, but she doesn't answer the phone, Jennifer, March 15th, and he tried to talk to her, but she said to me she doesn't talk to fucking Mexicans." On May 30, 2012, Duarte's attorney wrote to the City of Oakland to advise that the property was exempt from the jurisdiction of the Rent Program. Pleasants subsequently dismissed her complaint at the Rent Program and filed suit in superior court.

a contract, despite his repeated requests.  He asked her to vacate the house because he wanted to make improvements to the electrical wiring, heating system and alarm system, which required the house to be empty.  He also asked her to move because "she has a welding shop" in the house that was "using oxygen tanks and hazardous materials," creating a fire hazard.  Pleasants began making claims and giving him a hard time after he asked her to leave.  She would not let him clean the yard, which led to the City of Oakland imposing a fine, and she removed batteries from alarms, which also led to a fine. She was also rude and insulting to his son.

After Pacific supplemented its motion for summary judgment, Duarte again objected that the Oakland records lacked foundation, citing Evidence Code section 1401, and constituted inadmissible hearsay, citing Evidence Code section 1200.  The objection was overruled.  On appeal, Duarte argues that the Oakland records are "almost entirely inadmissible" and the trial court abused its discretion in overruling his objection.  Duarte concedes that the Oakland records are part of the Rent Program's files, and concedes that the Activity Log and Filing Check List included in the Oakland records are subject to the business records exception to the hearsay rule, codified in Evidence Code section 1280. But he objects that other documents in the Oakland records, including correspondence on which Pacific relies, have not been authenticated and constitute hearsay.  As we discuss below in connection with question 9, some of the documents include hearsay statements that are not admissible for their truth, but as a general matter the objections lack merit. At his deposition, Duarte testified that he recalled that Pleasants filed a complaint with the Rent Program, that he completed and signed a Landlord Response form with the help of someone at the Rent Program, and that he dictated and signed his March 2012 response to the Rent Program, which included the Rent Program's case number, and reflects his understanding that Pleasants had filed a complaint against him concerning the property.[12]  Duarte argues that the documents do not substantiate any allegation as to the

---

[12] Duarte argues that although he was "apparently being questioned" about the Oakland records at his deposition, Pacific has not established that, because Pacific failed to submit the deposition exhibits with the deposition transcript.  This failure is

condition of the property when Duarte applied for insurance. But the condition of the property, and more generally the truth or falsity of any statements made by Pleasants or Duarte to the Rent Program, are irrelevant for purposes of this case: all that matters is that Duarte knew of a claim or dispute concerning the property. We conclude that the trial court did not abuse its discretion in overruling Duarte's objection to Pacific's evidence.

But Pacific's evidence notwithstanding, Pacific failed to show that Duarte made any misrepresentation by answering "no" to question 4. And that is because to the extent question 4 can be interpreted at all, it is utterly ambiguous as to how it should be read. Question 4 asks, "Has damage remained unrepaired from previous claim and/or pending claims, and/or known or potential (a) defects, (b) claim disputes, (c) property disputes, and/or (d) lawsuits?" and calls for the answer "yes" or "no."

Pacific asks us to interpret the question as requiring the answer "yes" if there is unrepaired damage, *or* there are any open or pending claims, *or* there are any known or potential defects, *or* there are any known or potential claim disputes, *or* there are any known or potential property disputes, *or* there are any known or potential lawsuits. But Pacific's interpretation does not clearly follow from the language in the question. We begin with the garbled syntax of question 4, in which the only verb is contained in the phrase "has damage remained unrepaired." The subject of the verb is "damage." Therefore, the question is reasonably construed as simply asking whether damage has "remained unrepaired" from various past events, such as a "previous claim" or a property dispute or lawsuit. In other words, a logical way to read this inconsistently worded sentence is to tie everything back to the existence of unrepaired damage.

unfortunate, and no doubt complicated the trial court's review of the record, as it complicated ours. But the failure is not fatal to Pacific's motion because the deposition testimony, which refers to the contents, format and Bates numbers on the documents, makes clear that Duarte was questioned about the Oakland records, which appear as Exhibit A to Connie Taylor's declaration.

17

Question 4 does not include any form of the verb "to be," and therefore it is not at all clear that it asks "*Are there* any pending claims," or "*Are there* any known or potential claim disputes," or "*Are there* any known or potential property disputes," or "*Are there* any known or potential lawsuits?" Nor does the question, or anything else that Pacific points us to, offer any explanation of the terms used in the question, such as "claim," not to mention any explanation of the differences among "known or potential claim disputes" and "known or potential property disputes" and "known or potential lawsuits." Indeed, the question's ambiguity is underscored by Pacific's reliance on its underwriting guideline number 22 to interpret question 4. That guideline, one of 16 that identify "unacceptable properties," reads as follows: "Dwellings with unrepaired damage (including earthquake damage) and/or open or pending claims, and/or known or potential (a) defects, (b) claim disputes, (c) property disputes, and/or (d) lawsuits," is hardly a model of clarity itself.[13] In sum, we find Pacific's analysis of question 4 unconvincing.

Instead, we agree with Duarte that the question is reasonably interpreted as asking whether the property has unrepaired damage associated in some way with previous or pending claims, known or potential defects, known or potential claim disputes, known or potential property disputes, or known or potential lawsuits. Duarte stated in his declaration that he understood the term "claim" to mean insurance claim, and that when he "submitted the application there was no unrepaired damage at the Property from previous insurance claims." We agree that Duarte's proposed interpretation of question 4 is reasonable. Under this interpretation, Pacific has not met its burden to show that Duarte made a misrepresentation in his response to question 4, because Pacific has not shown that Duarte knew of any unrepaired damage from the identified sources. (See *O'Riordan v. Federal Kemper Life Assurance* (2005) 36 Cal.4th 281, 287-288 [no misrepresentation if applicant who has smoked just a couple of cigarettes answers "no" to

---

[13] Although the application lists more than 50 "guidelines," it contains 13 underwriting questions. This difference in number casts doubt upon whether it is reasonable to expect an applicant for insurance to construe the questions by reference to the guidelines.

18

the question "Have you smoked cigarettes in the past 36 months?" which is reasonably construed as an attempt to determine habitual use].)

        c.     *Question 9: Business on Premises*

As evidence that Duarte knew there was a business conducted on the property and misrepresented that fact by answering "no" to question 9, Pacific offered testimony from Duarte's deposition that Duarte knew that Pleasants's father sold motorcycle parts from the basement of the rented house while he lived there; that after Pleasants's father died in 2010, Pleasants sometimes sold motorcycle parts from the basement of the rented house; that Pleasants kept sandblasting equipment there; and that Duarte complained to the City of Oakland in March 2012 that Pleasants had "a welding shop," and the shop was "using oxygen tanks and hazardous materials, and can cause a fire to the neighborhood."

Pacific also offered evidence that in 2010, after Pleasants's father died and about two years before Duarte applied for insurance with Pacific, Pleasants sent him a letter (which he did not recall receiving) in which she said, "This is Business. I need to run my Business out of the Basement and if your maintenance issues are going to affect my business I need to know."[14] Immediately after that portion of the letter was read to Duarte at his deposition, this exchange took place:

Question by Pacific's attorney: "Did Ms. Pleasants run a business out of her basement?

"A Yes.

"Q What kind of business?

"A It's not a business. She has motorcycle parts.

"Q Was she selling the motorcycle parts?

"A Sometimes. [¶] . . .

"Q . . . How did you know she was selling motorcycle parts from the basement?

"A That's what her father did.

---

[14] Pleasants's statement in the letter is hearsay, and not admissible for its truth. Even if it were admissible, Pacific does not address the fact that the letter predates Duarte's application by almost two years.

"Q  And did she tell you that that's also what she was doing?

"A  Yes.

"Q  Did she tell you she was buying and selling motorcycle parts?

"A  No.

"Q  Was she doing any other sort of business in the house that you knew about?

"A  No."

Pacific also offered evidence that in February 2012, Duarte received a letter from Pleasants in which she wrote, "I am not working and rely on using the basement to refurbish my [father's] motorcycles to sell as my only source of income."  Like the statements in the 2010 letter from Pleasants, this statement is hearsay and not admissible for its truth.

Duarte argues that because he reasonably interpreted the phrase "business being conducted on the premises" in question 9 as referring to "regular and ongoing business activity," and because there was no such regular and ongoing business activity at the rental house (as opposed to an occasional sale) when he applied for insurance, Pacific has not met its burden, and that at the very least there is a dispute of fact as to whether there was a business conducted at the rental house.  We agree that Duarte's interpretation of question 9 is reasonable, and Pacific does not argue otherwise.  In the face of Pacific's own evidence that its inspector reported that that there was no business, farm or ranch operating on the property, in the face of Duarte's reasonable interpretation of question 9 as referring to ongoing and regular business activity, and in light of the requirement that we view the evidence in the manner most favorable to Duarte as the non-moving party, we are not persuaded that Pacific met its burden to show that Duarte misrepresented the existence of a business on the premises at the time he submitted the application for insurance.

Because we conclude that the trial court erred in determining that Pacific's rescission defense defeats Duarte's claims, we will reverse the trial court's orders granting Pacific's motion for summary judgment and denying Duarte's motion for summary adjudication.  We will remand for the trial court to rule on Duarte's summary

adjudication motion, which Pacific opposed not only on the ground that it was entitled to rescind the policy, but also on the ground that there was no potential for coverage, an issue that the trial court did not address.

## DISPOSITION

The judgment is vacated and the trial court orders granting Pacific's motion for summary judgment and denying Duarte's motion for summary adjudication are reversed. The matter is remanded for further proceedings consistent with this opinion. Duarte shall recover his costs on appeal.

_____

Miller, J.

We concur:

_____

Richman, Acting P.J.

_____

Stewart, J.

21

Filed 6/29/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| VICTOR DUARTE,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>PACIFIC SPECIALTY INSURANCE COMPANY,<br><br>     Defendant and Respondent. | A143828<br><br>(Alameda County<br>Super. Ct. No. RG13687803)<br>ORDER MODIFYING OPINION<br>AND CERTIFYING OPINION FOR<br>PUBLICATION<br>[NO CHANGE IN JUDGMENT] |

BY THE COURT:

It is ordered that the opinion filed herein on June 12, 2017, be modified as follows:

On page 18, in the fourth sentence of the first paragraph, the quotation beginning with "Dwellings with unrepaired damage" should end with a period after the word "lawsuits." The word "It" should then be added directly after the period so the next sentence will now read: "It is hardly a model of clarity itself."

The opinion in the above-entitled matter filed on June 12, 2017, was not certified for publication in the Official Reports. For good cause and pursuant to California Rules of Court, rule 8.1105, it now appears that the opinion, as modified, should be published in the Official Reports, and it is so ordered. This modification does not change the judgment.

Dated: _____     _____Acting P.J.

Trial Court:  Superior Court of Alameda County

Trial Judge:  Hon. Dennis W. Hayaski

Attorneys for Appellant                    Matthew R. Stall
                                           Felipe R. Parker




Attorneys for Respondent                   Lee J. Danforth
                                           Kathryn C. Klaus
                                           Coddington, Hicks & Danforth




A143828, *Duarte v. Pacific Specialty Insurance Company*