Filed 1/23/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| LAOSD ASBESTOS CASES. _____ FERMIN RAMIREZ, Individually and as Personal Representative, etc., Plaintiff and Appellant, v. AVON PRODUCTS, INC., Defendant and Respondent. | B313982 (Los Angeles County Super. Ct. No. 20STCV22671 Case No. JCCP4674) |

APPEAL from an order and judgment of the Superior Court of Los Angeles County, David S. Cunningham III, Judge. Reversed.

Maune Raichle Hartley French & Mudd, David L. Amell, Marissa Y. Uchimura; Law Office of Ted W. Pelletier and Ted W. Pelletier for Plaintiff and Appellant.

Foley & Mansfield, Keith M. Ameele, Margaret I. Johnson; Hawkins Parnell & Young, Claire C. Weglarz and Macy M. Chan for Defendant and Respondent.

This case highlights the difficulties both sides encounter when litigating a latent injury possibly caused by exposure to a toxic substance 50 years ago. After Alicia Ramirez developed mesothelioma, she and her husband Fermin Ramirez (the Ramirezes) brought this action in 2020 against a number of entities, including respondent Avon Products, Inc. (Avon).[1] Relying on a declaration from Lisa Gallo (Gallo Declaration), an employee who did not begin work at Avon until 1994, halfway through Alicia's alleged exposure period, Avon moved for and obtained summary judgment in its favor.

The Ramirezes appeal, contending the trial court erred in overruling their objections to the Gallo Declaration. The trial court found this declaration was the sole evidence which shifted the burden to the Ramirezes to produce evidence sufficient to create a triable issue of material fact. We agree the trial court abused its discretion in overruling the Ramirezes' objections.

Avon contends that even if the Gallo Declaration was erroneously admitted, summary judgment should still be affirmed on the ground that the Ramirezes' discovery responses were factually devoid. We find Avon failed to adequately develop this theory in the trial court and on appeal. It is forfeited. Because we find Avon did not shift the burden to the Ramirezes, we need not and do not consider the Ramirezes' argument that the trial court erred in finding they failed to create a triable issue

---

[1] Alicia died while this appeal was pending, and the action is now being prosecuted by Fermin in his individual capacity and as Alicia's successor-in-interest. Because we consider actions which predate Alicia's death, we continue to refer to her by her first name for clarity and to refer to appellants collectively as the Ramirezes for purposes of this appeal.

of material fact when they did not offer a statistical analysis showing it was more likely than not asbestos were in the Avon containers actually used by Alicia.

Avon requests that if we find erroneous the trial court's grant of summary judgment, we remand this matter for a ruling on Avon's motion for summary adjudication because this alternate motion is based on different facts, law and evidence. We do not agree and do not order a remand for this specific purpose.

We reverse the order granting summary judgment and the judgment and remand for further proceedings.

## BACKGROUND

In her complaint, Alicia alleged she had been exposed to asbestos in several ways, including the use of asbestos-contaminated talcum powder produced by Avon.[2] Through her discovery responses, Alicia stated she had used Avon's Imari and Elusive talcum powder daily from the mid-1970's to 2007 and her daughter used Avon's Imari, Sweet Honesty and Odyssey talcum powder in the bathroom the two women shared from the 1990's to 2007.

Avon brought a motion for summary judgment on the ground that "Plaintiffs cannot prove that Alicia Ramirez came into contact with an Avon product contaminated with asbestos. Unlike the typical defendant in an alleged asbestos-related

---

[2]     The complaint alleged Alicia was also exposed to asbestos through her work in the garment industry and through her husband, who was directly exposed to asbestos in his automotive repair work and who brought asbestos into the home on his clothing and person.

personal injury case, Avon is a cosmetics and fragrance company which has never included or used asbestos as an ingredient or component in its products. In other words, its products are designed to be asbestos-free. Thus, to succeed on their claims, Plaintiffs must prove that the Avon cosmetic talc products at issue more likely than not contained asbestos."

Avon also moved in the alternative for summary adjudication on the design defect claims in the first cause of action for negligence and the second cause of action for strict liability; the failure to warn claims in those causes of action; the negligent misrepresentation claim in the third cause of action and the fraud by non-disclosure claim in the fourth cause of action.

In support of its motions, Avon offered the declaration of Lisa Gallo, who, at the time, was Avon's vice president of Global Innovation, Research, and Development. Gallo had worked in Avon's research and development department since January 1994. Apparently, Gallo had previously been designated by Avon as a person most knowledgeable for purposes of some categories of information for a deposition noticed by the Ramirezes pursuant to Code of Civil Procedure section 2025.230. In her declaration, Gallo stated: "I make the following statements based on either my investigation or my own personal knowledge." Virtually all of her statements, however, concerned activities at Avon in the 1970's, and all but two of the documents she attached were also from that decade. The Ramirezes objected to her declaration and attached exhibits on the grounds they lacked foundation, lacked personal knowledge, and contained hearsay.

The trial court overruled the Ramirezes' objections, found the Gallo Declaration shifted the burden of proof, found the Ramirezes had failed to show a triable issue of material fact, and granted summary judgment in favor of Avon. The court's amended March 2, 2021 order stated the reasons for the determination "are set forth by the Court in both the minute order **(Exhibit A)** and the hearing transcript **(Exhibit B)**."

The minute order states: "The motion for summary judgment is granted because Avon's affirmative evidence shifts the burden, and Plaintiffs' evidence fails to raise triable issues of asbestos content and exposure. Avon never included or used asbestos as an ingredient or component of its cosmetics products. Since the [early 1970's,] Avon has required its talc suppliers provide only asbestos-free talc. During the relevant time period, Avon had in place internal screening and testing programs as a quality assurance measure to ensure that the raw ingredient talc it received from suppliers was asbestos-free. No talc was used in an Avon cosmetic product if even a single asbestos fiber was detected during Avon's three-step screening program." There is no dispute that all of these facts come from the Gallo Declaration, and it was solely that declaration which shifted the burden of proof.

## DISCUSSION

"[F]rom commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).) "[T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of

5

material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Ibid.*)

When the moving party is a defendant, it must show that the plaintiff cannot establish at least one element of the cause of action. (*Aguilar*, *supra*, 25 Cal.4th at p. 853.) "The defendant has shown that the plaintiff cannot establish at least one element of the cause of action by showing that the plaintiff does not possess, and cannot reasonably obtain, needed evidence." (*Id.* at p. 854.) The defendant must "present evidence, and not simply point out that the plaintiff does not possess, and cannot reasonably obtain, needed evidence." (*Ibid.*) Thus, "the defendant *must* 'support[]' the 'motion' with evidence including 'affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice' must or may 'be taken.' (Code Civ. Proc., § 437c, subd. (b).) The defendant may, but need not, present evidence that conclusively negates an element of the plaintiff's cause of action. The defendant may also present evidence that the plaintiff does not possess, and cannot reasonably obtain, needed evidence—as through admissions by the plaintiff following extensive discovery to the effect that he has discovered nothing." (*Id.* at p. 855.)

"Supporting and opposing affidavits or declarations . . . shall set forth admissible evidence." (Code Civ. Proc., § 437c, subd. (d).) "Matters which would be excluded under the rules of evidence if proffered by a witness in a trial as hearsay, conclusions or impermissible opinions, must be disregarded in supporting affidavits." (*Hayman v. Block* (1986) 176 Cal.App.3d 629, 639.)

Ordinarily, we review a trial court's rule on evidentiary objections for an abuse of discretion.  There is a split of authority on evidentiary objections made in connection with a motion for summary judgment, however.  As the Ramirezes point out, the Sixth District Court of Appeal and, to a more limited degree, the First District Court of Appeal have held that some or all written evidentiary objections should be reviewed *de novo*.  (*Pipitone v. Williams* (2016) 244 Cal.App.4th 1437, 1450–1451; *Strobel v. Johnson & Johnson* (2021) 70 Cal.App.5th 796, 816–817.)  We agree with the majority of courts which have held that the abuse of discretion standard applies.[3]

I.     *The Trial Court Erred in Overruling the Objections to the Gallo Declaration.*

The Ramirezes contend the trial court erred in overruling their objections to the Gallo Declaration and attached exhibits based on lack of foundation, lack of personal knowledge and the hearsay nature of the documents.  We agree.

---

[3]     See, e.g., *Schmidt v. Citibank, N.A.* (2018) 28 Cal.App.5th 1109, 1118; *Butte Fire Cases* (2018) 24 Cal.App.5th 1150, 1169; *Duarte v. Pacific Specialty Ins. Co.* (2017) 13 Cal.App.5th 45, 52; *O'Neal v. Stanislaus County Employees' Retirement Assn.* (2017) 8 Cal.App.5th 1184, 1198–1199; *Ryder v. Lightstorm Entertainment, Inc.* (2016) 246 Cal.App.4th 1064, 1072; *Jones v. Wachovia Bank* (2014) 230 Cal.App.4th 935, 951; *Serri v. Santa Clara University.* (2014) 226 Cal.App.4th 830, 852; *Ahn v. Kumho Tire U.S.A., Inc.* (2014) 223 Cal.App.4th 133, 143–144; *Garrett v. Howmedica Osteonics Corp.* (2013) 214 Cal.App.4th 173, 181; cf. *Howard Entertainment, Inc. v. Kudrow* (2012) 208 Cal.App.4th 1102, 1122–1123 (conc. opn. of Turner, P. J.) (*Howard*) [listing 13 decisions and stating the "unanimous" decisions from 2006 to 2012 applied the abuse of discretion standard].

7

During oral argument, the court explained it was overruling the objections because Gallo "was offered as a designated corporate representative and person most knowledgeable, which does give a basis for her legally to obtain and provide the foundational testimony, based on her independent review, which I think she did indicate she had done. [¶] And also when I look at her title and her duties and responsibilities, that further suggests that the declaration is appropriately admissible and may be considered by the court as affirmative evidence."

The Ramirezes contend there are only two types of witnesses, lay or expert, and Gallo was not designated as an expert. She was therefore limited to testimony reflecting her personal knowledge and could not testify to hearsay. We agree.

The Evidence Code recognizes only two types of witnesses: lay witnesses and expert witnesses. "Subject to Section 801, the testimony of a witness concerning a particular matter is inadmissible unless he has personal knowledge of the matter. Against the objection of a party, such personal knowledge must be shown before the witness may testify concerning the matter." (Evid. Code, § 702, subd. (a).) Evidence Code section 801 governs the testimony of an expert witness, who may provide an opinion based on hearsay which need not always be based on personal knowledge.

There is no special category of "corporate representative" witness, as the trial court suggested. There is no exemption from the Evidence Code for a witness who has conducted an "independent review," whatever the trial court meant by that phrase. Gallo was certainly not an independent witness; she is an Avon employee who conducted her "investigation and review"

8

on behalf of Avon, a party to this action. Even trained and sworn police officers who are authorized by the State of California to investigate crimes are not exempt from the requirements of the Evidence Code when testifying at trial in a non-expert capacity. Gallo was simply a lay witness, and as such she was limited to matters as to which she had personal knowledge.

The Evidence Code also does not recognize a special category of "person previously designated as most knowledgeable" witness. "Person most qualified" is a term from the Code of Civil Procedure pertaining to depositions of entities which are not natural persons. Code of Civil Procedure section 2025.230 provides: "If the deponent named is not a natural person, the deposition notice shall describe with reasonable particularity the matters on which examination is requested. In that event, the deponent shall designate and produce at the deposition those of its officers, directors, managing agents, employees, or agents who are most qualified to testify on its behalf as to those matters to the extent of any information known or reasonably available to the deponent." (Code Civ. Proc., § 2025.230)

This section is part of the Civil Discovery Act. (Code Civ. Proc., § 2016.010 et seq.) To state what should be obvious, the purpose of discovery is to permit a party to learn what information the opposing party possesses on the subject matter of the lawsuit, and the scope of discovery is not limited to admissible evidence. (Code Civ. Proc., § 2017.010 [discovery must be relevant but may be of "matter [that] either is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence."].) Thus, the mere fact that a person is asked about a matter at a deposition and provides

9

information in response does not make that testimony admissible at trial.  As section 2025.620 makes clear, deposition testimony "may be used against any party who was present or represented at the taking of the deposition . . . *so far as admissible under the rules of evidence applied as though the deponent were then present and testifying as a witness.*"  (Code Civ. Proc., § 2025.620, italics added.)

While discovery in general aids both plaintiffs and defendants equally, the tools of discovery are intended to benefit the party utilizing those tools.  The purpose of a deposition is not to aid the party whose witness is being deposed; it is to aid the opposing party taking the deposition.  More specifically, the primary purpose of section 2025.230 is not to aid corporate entities.  Rather, it is intended to simplify discovery for the party seeking information from a corporation.  "As one treatise explains, '[t]he purpose of this provision is to eliminate the problem of trying to find out who in the corporate hierarchy has the information the examiner is seeking.  E.g., in a product liability suit, who in the engineering department designed the defective part?'  (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2001) ¶ 8:474, p. 8E-18.)  The authors of the treatise explain that '[u]nder former law, the entity was required only to designate "one or more" officers or employees to testify on its behalf.  This permitted considerable "buck-passing" and "I don't know" answers at deposition.'  (*Ibid.*)  Under the current law, '[i]f the subject matter of the questioning is clearly stated, the burden is on the entity, not the examiner, to produce the right witnesses.  And, if the particular officer or employee designated lacks personal knowledge of all the information sought, he or she is

10

supposed to find out from those who do!' (*Id.*, ¶ 8:475, p. 8E-18.)" (*Maldonado v. Superior Court* (2002) 94 Cal.App.4th 1390, 1395--1396.)

Avon does not cite any California case or statutory law holding that notwithstanding the above clear statutory law, a person deposed as a corporate person most qualified (PMQ deponent) may testify at trial unrestrained by the rules of evidence which apply to ordinary lay witnesses. Instead, Avon simply argues that the Ramirezes' "one-sided interpretation of the law as requiring corporate PMQs to testify at deposition to provide admissions that Plaintiffs can use against the corporation, but precluding corporations from offering a declaration or even trial testimony to defend against Plaintiff's claims flies against fundamental concepts of due process. Under both the state and federal Constitutions, defendants in civil actions are entitled to procedural due process protections which 'ensure a fair adjudicatory process before a person is deprived of life, liberty or property.' "

What Avon is in effect suggesting is that if a party deposes a corporate entity, the corporate entity is no longer bound by the rules of evidence at any subsequent trial or hearing. This is simply nonsense. This would not only eliminate depositions of corporations as a practical matter and thereby frustrate the Civil Discovery Act, it itself would violate due process, since it would place natural persons at a clear disadvantage in defending or prosecuting lawsuits where the opposing party is a corporation.

Avon's suggestion that it is being treated unfairly because it is a defendant or a corporation is simply not true. First, any restrictions on the testimony of a PMQ deponent at trial apply regardless of whether the corporation is a defendant or a

11

plaintiff. The rules relating to witness testimony at a trial or hearing also apply equally to defendants and plaintiffs. Second, the described situation also applies to parties who are natural persons. A "natural person" party may be required to testify at a deposition to provide admissions which the opposing party can use against the "natural person" party. The "natural person" party is not then entitled to offer inadmissible evidence at trial to defend against his or her own deposition admissions.

Avon next claims that, in truth, due process requires corporations to receive special treatment under the rules of evidence simply to place them on a level playing field with natural persons. Avon argues: "Whereas natural persons may often resort to firsthand testimony about events to mount a defense, corporations, especially when defending against latent injury claims from decades-old exposure, cannot do the same. When corporations have existed for generations and the claims are based on long-ago activities, it is impossible to mount an effective defense the same way that a natural person would. For example, many of the individuals who may have contributed to the collective knowledge of the entity at one point may be unable to attend trial, may be impossible to locate or may have passed away. Further, the corporation's knowledge is not unified: unlike a single person's recollection, the corporation's information is stored in fragments and excerpts, requiring synthesis and analysis to be meaningful."

To begin with the obvious: the burden is on the plaintiff to prove those "long-ago activities" occurred. The plaintiff will be at least as handicapped as the corporate defendant by the unavailable corporate witnesses who undertook those long-ago activities. Similarly, the plaintiff can only prove the corporation's

12

knowledge through those same fragments and excerpts that the corporation complains about.

Moving to the perhaps less obvious: The problem is not that Avon is a corporation, the problem is that this case involves a latent injury which began almost 50 years ago. This is equally a problem for the Ramirezes, however. While Alicia may have been able to rely on her recollection that she used Avon's products, proving the contents of those products is an entirely different matter. If anything, the problem is more acute for the Ramirezes, who bear the burden of proving the contents of those products. Indeed, the Ramirezes have had to look outside Avon for proof that the raw talc Avon used contained asbestos, relying on expert analysis of the sources of the talc used by Avon. Avon was free to do the same in response, but did not offer any such expert testimony in support of its motion.

Ending with the least obvious: If anything, the passage of time gave Avon an advantage here because, unlike Alicia, Avon knew in the early 1970's that some sources of talc were contaminated with asbestos, and that at a minimum there were concerns in the scientific community that asbestos in talc presented a potential health hazard. Alicia did not have such knowledge. According to the Gallo Declaration, Avon almost immediately took steps to use only asbestos-free talc, yet Avon apparently chose not to document its efforts, or not to preserve that documentation. If there is an explanation for this omission, it is not found in the record on appeal. At the same time, Avon faults Alicia for not keeping the containers she used in the past, when Alicia had no reason to suspect there was anything wrong with the contents.

13

After arguing for special treatment for corporations, Avon attempts to explain why it would be acceptable to give corporation witnesses special privileges under the Evidence Code: "The corporate witness is a channel through which compiled corporate information is conveyed: the proposed affirmative testimony is not mere speculation, but rather, can be corroborated by underlying evidence which, itself, is admissible. Concerns over unreliable testimony—those which animate the personal knowledge rule—are thus not implicated by the corporate witness's testimony.  Rather such testimony calls for the court to engage in the conventional 'practical compromise' as it would when, for example, a person is asked to testify about his 'own age.' "

Assuming for the sake of argument that a corporate witness completely lacking in personal knowledge of a subject could testify based on "underlying evidence which, itself, is admissible," we do not see how such a rule would aid Avon here. Avon has not shown that the evidence underlying the Gallo Declaration would itself be admissible.  Although Gallo does not identify any source at all for most of her information, given that she did not work at Avon until 1994, her statements involving activities before that time cannot be based on personal knowledge and must be based on hearsay.

Even assuming for the sake of argument that Gallo could "channel" information received from individuals who had personal knowledge of events and could testify as witnesses, there is no indication that such persons were the source of Gallo's

14

information.[4]  Given the time frame involved, Gallo is most likely "channeling" information from people who not only lacked personal knowledge themselves, but acquired their information from people who also lacked personal knowledge.[5]  This oral passing of information raises exactly the reliability concerns which animate the personal knowledge requirement, not to mention the rule against hearsay.  The trial court had no way of evaluating the reliability of the information Gallo received.  Further, Gallo's repetition of that information was not reliable simply because she was repeating it as a corporate representative rather than on her own behalf.  She is still a natural person, subject to the foibles of her own memory and understanding.  Thus, the trial court abused its discretion in overruling the Ramirezes' objections to Gallo's statements in her declaration.

This lack of personal knowledge is not cured by the 15 documents which Gallo attached to her declaration in support of Paragraphs 7, 8, 10, 11, 12, 13,14, 16, 17, 18, 19, 20 and 21.  Even assuming Gallo is "channeling" or commenting on these documents, the documents are all hearsay with no identified exception.  Thus, they are not themselves admissible evidence.

In addition to being hearsay, four documents were not prepared by Avon and there is no indication of how or when Avon obtained two of those documents.  Exhibit 1 appears to be a memorandum summarizing a 1971 symposium held by a division

---

[4]    In that event, of course, the person should have provided his or her own declaration.  The inconvenience of filing multiple declarations is not an exception to the hearsay rule.

[5]    Since Gallo does not identify any individuals who are the sources of her information, it is not possible to be sure.

15

of the Food and Drug Administration; the document does not list Avon as a participant or addressee.  Exhibit 12 appears to be a document prepared by an industry trade group; Avon is not cited in the document and is not an addressee.  Exhibits 9 and 10 are from one of Avon's suppliers and were sent to Avon, but there is no context to the communications, and they do not directly correlate to the statements Gallo makes before citing them.

Exhibits 2, 3, 4, 6, 7, 8, 11, 13, 14 and probably 15 were prepared by Avon employees, but there is no indication that they fall under the business records exception or could satisfy even the basic requirements for documents to qualify for that exception. (See Evid. Code, § 1271 [a document is admissible notwithstanding the hearsay rule if: "a) The writing was made in the regular course of a business; [¶] (b) The writing was made at or near the time of the act, condition, or event; [¶] (c) The custodian or other qualified witness testifies to its identity and the mode of its preparation; and [¶] (d) The sources of information and method and time of preparation were such as to indicate its trustworthiness."].)

For example, Exhibits 4 and 8 are memoranda summarizing telephone conversations, but there is no testimony in the record on appeal that this type of memo was prepared in the ordinary course of business by Avon employees.  A number of exhibits show on their face that they were not prepared at or near the time of events described in them.  Exhibit 2 memorializes a meeting that occurred 4 days earlier and Exhibit 7 is a letter from Avon to the OSHA Compliance Office, answering questions from OSHA.  The letter is dated September 1976 but refers generally to activities dating back to 1973; it discusses in some

16

detail a change of supplier six months earlier.[6] Exhibits 4 and 8 likewise refer to events months or years in the past. For Exhibits 3, 6, and 13, it is not possible to tell when they were prepared in relation to the activities described therein. Exhibit 15 is dated 1992 but makes assertions concerning the entire history of Avon's talc production.

Not only are the documents themselves hearsay, all contain hearsay statements made by someone other than the author. Some hearsay statements appear to be made by Avon employees, but their background and position at Avon are unknown. It is not possible to determine whether these sources of information were accurately cited, or if the sources are reliable or had personal knowledge of the matters discussed. At least four documents contain hearsay statements by persons who are not Avon employees.

Based on these flaws alone, the trial court abused its discretion in admitting the documents, and Gallo's testimony "channeling" those documents.

---

[6] Further, the letter appears to have been prepared as a response to a regulatory inquiry, rather than to facilitate Avon's business operations, which again would preclude its admission under the business records exception. (See, e.g., *People v. McVey* (2018) 24 Cal.App.5th 405, 415 [" 'When a record is not made to facilitate business operations but, instead, is primarily created for later use at trial, it does not qualify as a business record.' "].) Exhibits 4 and 8, which memorialize conversations with the FDA, also appear to fall into this category.

Further, even if all the internal documents were admissible (as opposed to Avon's broad claims to OSHA, the FDA, reporters and possibly the public)[7], the documents would not show that Avon's products never contained asbestos. These documents all cover a very limited early time span and only one supplier. They provide no basis for reasonable inferences concerning Avon's behavior during the entire 50-year period of Alicia's claimed exposure or the behavior of other suppliers.

For example, we note that Exhibit 15, the Pennisi statement, cited in support of Paragraph 21, is particularly problematic. In that paragraph, Gallo states: "No talc was used in a cosmetic product if even a single asbestos fiber was detected in Avon's three-step screening program." Gallo cites Exhibit 15 as a supporting document. This exhibit is a one-page document referred to as the Pennisi statement; it resembles a press release, and one in draft form at that. It begins: "There has been concern in certain countries over the presence of asbestos in cosmetic grade talc." The declaration continues: "As an industry leader, Avon has always been committed to ensure that the talcs we sell and use are free from asbestos." The statement contains general descriptions of the testing Avon conducts on talc, states that Avon requires its vendors to meet stringent standards and claims that "[n]o talc is sold if even a single asbestos fiber is detected." The unsigned unsworn statement is dated "April 1992" and attributed to "Stephen C. Pennisi, PhD DABT," but there is no indication of Pennisi's role at Avon or the length of his tenure there, nor is there any indication of the basis of his statements or

---

[7]     Exhibit 15, the Pennisi statement, falls into this category. Because it played a central role in the summary judgment proceedings, however, we discuss it briefly below.

18

the purpose for which the statement was prepared. Among the many, many flaws of this document is that it contains no date except the one underneath Pennisi's name.[8] There is thus no way to determine when the testing or vendor restrictions began or how long they continued.

The trial court abused its discretion in admitting all these hearsay documents, but the abuse of discretion was particularly egregious in the case of the Pennisi statement. Without the Gallo Declaration, Avon did not offer evidence which shifted the burden to the Ramirezes. Accordingly, we reverse the order granting summary judgment and the judgment.

II.    *Avon Did Not Adequately Develop Its Devoid Discovery Claim.*

Avon contends that even if we find the trial court erred in finding the Gallo Declaration sufficient to shift the burden of proof, we should still affirm the summary judgment on the alternate ground that the Ramirezes' discovery responses were factually devoid. We find Avon has forfeited this claim.

Avon did not raise this ground in its notice of motion, as is required. (Code Civ. Proc., § 1010 ["notice of a motion, other than for a new trial, must state when, and the grounds upon which it will be made, and the papers, if any, upon which it is to be based."].) While this is not a fatal defect if the ground is adequately raised in the motion itself, Avon made at best a brief conclusory argument on this ground, unsupported by any legal authority. Avon contended: "Plaintiffs' responses to Avon's discovery requests infer that they have no evidence that proves

---

[8]    There is nothing on the face of the document to connect it to Avon apart from Pennisi's use of the pronoun "we."

that the Avon products at issue in this case more likely than not were contaminated with asbestos.  [Citation.]  Moreover, Plaintiffs have refused to disclose any testing that might show the Avon product at issue were [*sic*] contaminated with asbestos.  [Citation.]  If plaintiffs actually had tests that showed the Avon products at issue contained asbestos—a central fact of the case—they would have most certainly have disclosed them.”

At the hearing on the motion for summary judgment, however, Avon stated: “As Your Honor is aware, there has been some issues with the plaintiffs being a little not forthcoming in disclosing evidence to Avon.  And at this point, plaintiffs still have not produced any testing documents, or any evidence that any of the products at issue in this case contain asbestos.”  Counsel for the Ramirezes replied: “Briefly just to address the ongoing discovery dispute with Avon, I believe that it is entirely irrelevant to the issues before the court today.  While Avon may have the ability to move to exclude evidence at trial, due to an alleged failure to disclose during the course of discovery. [¶] There’s no statute or case law that I’m aware of that creates a discovery sanction, which directs the court to grant a motion for summary judgment where there is an ongoing discovery dispute, separate and apart from the existence of a triable issue of fact.”  The court replied:  “I’m not making the decision based on any discovery sanction or dispute.”

It seems clear from this exchange that there was an ongoing discovery dispute of some sort at the time of the motion for summary judgment.  In light of this dispute, it would be unreasonable to infer a lack of evidence from any missing, devoid or incomplete responses.  Without more information, it seems equally likely that any deficient responses were due to the then-

20

ongoing dispute.  Avon does not address this dispute at all on appeal, however, or explain why it would be more reasonable to infer a lack of evidence rather than an unwillingness to produce evidence due to a discovery dispute.  We are not required to develop a party's argument for it nor to search the record on our own seeking deficiencies.  (See *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153, 156 (*United Grand*).)  For this reason alone, Avon has forfeited this claim.

We note that instead of addressing the discovery dispute, Avon makes a new argument on appeal:  the responses to interrogatories are deficient because they simply "restated Plaintiffs claims" and gave a "laundry list" of documents, and the responses to request for document productions identified only of two declarations.  Avon did not raise or develop this argument in the trial court; in it motion Avon did not cite the *Andrews v. Foster Wheeler* case on which it now relies.  (See *Andrews v. Foster Wheeler LLC* (2006) 138 Cal.App.4th 96, 107 (*Andrews*) [referring to a plaintiff's "boilerplate answers that restate their allegations, or  . . . laundry lists of people and/or documents"  as capable of shifting the burden to plaintiff on summary judgment].)  This is another reason to decline to consider Avon's argument.  (See *Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 704 [theories that were not fully developed or factually presented to the trial court cannot create a triable issue on appeal].)

We also decline to consider this new argument because Avon has failed to develop it on appeal.  Avon summarizes what appears to be more than 20 pages of interrogatory responses in less than a paragraph, then complains the responses lack detail.  More than this is required.

21

A defendant moving for summary judgment "may . . . present evidence that the plaintiff does not possess, and cannot reasonably obtain, needed evidence—as through admissions by the plaintiff following extensive discovery to the effect that he has discovered nothing." (*Aguilar*, *supra*, 25 Cal.4th at p. 855.) While "circumstantial evidence supporting a defendant's summary judgment motion 'can consist of "factually devoid" discovery responses from which an absence of evidence can be inferred,' [it must be] noted 'that the burden should not shift without stringent review of the direct, circumstantial and inferential evidence.' " (*Andrews*, *supra*, 138 Cal.App.4th at p. 103.)

Avon's discussion on appeal of the Ramirezes' discovery responses more closely resembles an argument that the Ramirezes do not possess sufficient evidence to survive summary judgment than it is an analysis of the evidence actually identified in those responses. Again, we are not required to develop a party's argument for it nor to search the record on our own seeking deficiencies. (See *United Grand Corp*, *supra*, 36 Cal.App.5th at pp. 153, 156.) "We may and do 'disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt.' " (*Id*. at p. 153.)

III.     *Avon's Motion for Summary Adjudication Is Premised on the Same Facts as Its Motion for Summary Judgment.*

Avon contends that if we reverse the grant of summary judgment we should remand this matter with directions to the trial court to consider Avon's alternative motion for summary adjudication. Avon claims that motion was based on different facts, law and evidence. We do not agree.

Four of the five claims that are the subject of the summary adjudication motion turn on Avon's knowledge: failure to warn; negligent misrepresentation; fraud; and punitive damages. In both its notice of motion and its supporting memorandum, Avon contends the failure to warn claim fails because "Avon designed asbestos-free products and manufactured those products in a way to ensure that they did not contain asbestos." Avon's discussion of the next two claims, negligent misrepresentation and fraud, begin: "As noted above, Avon had no reason to believe its products were contaminated with any level of asbestos." Avon's discussion of the punitive damages claim states the claim cannot be proved by clear and convincing evidence "especially . . . in light of the fact that Avon designed asbestos-free products and manufactured those products in a way to ensure that they did not contain asbestos." Even Avon's discussion of the design defect claim is premised on its assertion that it "designed asbestos-free products."

These arguments are simply variations of Avon's contention that its products were asbestos free. Without the Gallo Declaration these claims must all fail. Accordingly, we decline to direct the trial court to consider Avon's alternate motion for summary adjudication.

## DISPOSITION

The order granting summary judgment and the judgment are reversed. The matter is remanded for further proceedings. Appellant to recover costs on appeal.

**CERTIFIED FOR PUBLICATION**

STRATTON, P. J.

We concur:

GRIMES, J.

HARUTUNIAN, J.[*]

---

[*]  Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.